286 N.J. Super. 533 (1996)
670 A.2d 24
ANGELICA JIMENEZ, PLAINTIFF-APPELLANT,
v.
GNOC, CORP., T/A BALLY'S GRAND HOTEL AND CASINO, WESTINGHOUSE ELEVATOR CORPORATION; AND JOHN DOE I-X, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1995.
Decided January 16, 1996.
*536 Before Judges MICHELS and VILLANUEVA.
George Duggan argued the cause for appellant (Mr. Duggan, attorney, of counsel and on the brief).
*537 Thomas J. Alworth argued the cause for respondents (Shanley & Fisher, attorneys; Mr. Alworth and Joseph M. Cerra, of counsel and on the brief).
Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross[1] submitted a brief for GNOC, Corp., t/a Bally's Grand Hotel and Casino (Alan J. Cohen, of counsel; Mr. Cohen and N. Lynne Hughes on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff Angelica Jimenez appeals from a judgment of involuntary dismissal entered at the conclusion of her proofs in this personal injury negligence/product liability action instituted against defendants GNOC, Corp., t/a Bally's Grand Hotel and Casino (Bally's), and Westinghouse Electric Corporation (Westinghouse). We affirm.
On March 28, 1989, plaintiff and her daughter decided to leave Bally's casino floor where they had been gambling and go upstairs to get coffee. Plaintiff boarded upward escalator # 1 behind her daughter and grasped the right handrail. According to plaintiff, after the escalator advanced four or five steps the right handrail stopped, and she was thrown backwards as the steps continued to rise. Plaintiff's body twisted, and she lost her balance and screamed for help. Two men, Henry Dumas and Walter Jenkens, who were standing behind her, caught and supported plaintiff while they rode to the top of the escalator. After receiving minor medical aid from the casino staff for a small cut, plaintiff went home. Thereafter, she experienced intermittent lower back pain.
Jenkens' attention was concentrated on plaintiff after she lost her balance, and he noticed nothing out of the ordinary about the handrail. Dumas, who was behind Jenkens on the escalator, did *538 not notice anything amiss with the right handrail which he, too, used during his ascent. Dumas said he did not hear plaintiff scream or call for help.
The incident was captured by Bally's on a videotape which was viewed by the trial judge and jury. An accident report completed by the responding security personnel states, in part:
Sgt. DiEva and this officer checked the escalator. The handrail on the right side of Escalator # 1 was not working at all. Engineering Shift Superv. John DiDonato responded and the escalator was shut down. S/O Lyons and S/O Miller were posted at different times to re-direct patrons away from that section. Left handrail working properly. Escalator #2's handrails working properly also.
At trial, plaintiff called Theodore Moss, a licensed New Jersey civil engineer, as an expert in safety engineering. Moss gave his explanation of the videotape to the jury:
She's going up, okay. She's still here on the handrail. Her body turns just like mine did. She comes over it. Her feet kept going up. Oh, she's stumbling backwards, moving backwards because the feet have to come back to where the hand was. Okay.
So, the escalator is moving up and the handrail has definitely stopped. It's stopped before the accident. It stopped as a function of the escalator itself, not as a function of her weight or her doing anything, because it stopped before she did anything. The only thing she's got is her hand and maybe a tiny bit of leaning here, but basically that's all she's doing, right. She's not balancing herself on the handrail, but when it stopped, it stopped before that.
According to Westinghouse's account of the videotape, it shows that
Ms. Jimenez reached down before she boarded the escalator to pick up something on the floor. Then, after boarding the escalator, she turned to face the right handrail, her left foot one stair higher than her right. She then reached over the right side of the escalator in an apparent effort to pick up something else. Ms. Jimenez, who is 5-foot-5 and weighed 235 pounds in March, 1989, was thus positioned so that her waist met the handrail. Her torso was extended over the right side of the escalator so that the handrail bore the entire weight of her upper body. Having placed herself in this precarious position, the tape shows that Ms. Jimenez lost her balance and fell backwards in [sic] the arms of a man riding the escalator behind her.
From our review of the videotape we cannot determine whether the right handrail was stopped before plaintiff started to turn and fall backwards or whether the handrail stopped when plaintiff leaned over it.
*539 Moss testified that the "ultimate cause" of the accident was "that the preventive maintenance wasn't properly done." He opined that, had there been proper preventive maintenance the handrail would not have stopped, nor would escalator # 1 have had three other recent problems involving the handrail. He concluded that the stopping of a handrail in normal operation while the steps continue to rise would not occur if there was due care in the maintenance. Moss could not, however, specifically articulate any mechanical root problems which caused the handrail failure, nor could he describe what type of work would be required to correct this so-called mechanical problem. Moss did not ask plaintiff for her version of the accident, and he did not view the accident scene. His entire expert opinion was based on his experience, the repair record of the escalator, the testimony of the people who worked on the escalator, and the videotape.
At the close of plaintiff's case before a jury, the trial court granted Bally's motion for an involuntary dismissal on the grounds that Bally's duty was only to exercise reasonable care toward its casino guests and plaintiff had demonstrated no negligence or breach of that standard. The trial court also granted Westinghouse's motion to strike the testimony of plaintiff's expert because it constituted a net opinion. As a result, the trial court granted Westinghouse's motion for an involuntary dismissal because he found that without the expert testimony "the Doctrine of Res Ipsa Loquitur does not apply here."
On appeal, plaintiff seeks to reverse the judgment of involuntary dismissal and obtain a new trial, contending that (1) her expert's testimony that negligent preventive maintenance caused the handrail to stop during normal operation did not constitute a net opinion and, therefore, the trial court erred in striking the testimony; (2) the escalator handrail stopped while the steps continued moving, which is an aberration from normal operation of the escalator and, therefore, the doctrine of res ipsa loquitur applied; and (3) the escalator was owned by Bally's which had a nondelegable *540 duty to exercise reasonable care to keep the escalator in safe condition for use by plaintiff and other invited guests.

I.

WAS THE OPINION OF PLAINTIFF'S EXPERT A NET OPINION?
Westinghouse argues that Moss's expert testimony was a net opinion because it was not based on established facts and Moss could not specify any negligent acts or omissions on Westinghouse's part and, therefore, it was properly struck from the evidence.
Qualified expert testimony is admissible to assist the jury, N.J.R.E. 702, but there must be a factual and scientific basis for an expert's opinion. Rubanick v. Witco Chemical Corp., 242 N.J. Super. 36, 45, 576 A.2d 4 (App.Div. 1990), modified on other grounds, 125 N.J. 421, 593 A.2d 733 (1991). An opinion lacking in foundation is worthless. Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 305, 108 A.2d 616 (1954). When an expert's opinion is merely a bare conclusion unsupported by factual evidence, i.e., a "net opinion," it is inadmissible. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981); In re Yaccarino, 117 N.J. 175, 196, 564 A.2d 1184 (1989). In essence, the net opinion rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion. As the Supreme Court stated, this rule "frequently focuses ... on the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom." Buckelew, supra, 87 N.J. at 524, 435 A.2d 1150. Where, as here, an expert offers an opinion without providing specific underlying reasons for the alleged malfunction, he ceases to be an aid to the trier of fact and becomes nothing more than an additional juror.
While plaintiff's counsel concedes in his brief that "Moss was unable to pinpoint the exact cause of the right handrail stopping," *541 he argues on appeal that Moss's testimony is not a net opinion since Moss concluded that Westinghouse's improper preventative maintenance caused the condition which triggered plaintiff's accident and injuries. Moss could not explain why the preventative maintenance in this case was inadequate. He did not even explain how improper maintenance could lead to a mechanical problem that would cause a handrail to stop. Moss had to concede that he could only "guess" what caused the handrail to stop. In the end, all Moss said was that escalator handrails do not stop unless there has been improper maintenance. Even in offering this bare opinion, Moss did not explain why other general theories of liability as easily identifiable as "improper maintenance," e.g., design or manufacturing defects, were not the alleged root problem.
Without providing any factual foundation, Moss testified that improper maintenance could be inferred because Westinghouse had worked on the escalator three times in the two months preceding the incident. As the trial court noted, this observation was misleading. Westinghouse's work reports indicate the following: two employees each worked eight hours on March 9, 1989 and "replaced 4 drive rollers & 2 pressure roller units  Removed Righthand Rail & cleaned inside & tracking. Lube hand rail Track, installed handrail"; two employees each worked three hours on March 10, 1989, and "[r]emoved left hand rail  cleaned out track & inside rail  lubed track. Installed hand rail  serviced unit, lubed rack & drivechains"; one employee worked two hours on March 19, 1989, and reported, "[s]tairway making loud noise with smoke and bad smell. Symtems [sic] gone on arrival[.] Could find no reason. Put call in for escaltor [sic] mech. or supervisor with no response. `Left stairway down for Monday service, as per Bally Grand'"; and two employees each worked eight hours on March 21, 1989, to "[r]eplace broke assy, speed sensor & dc power supply & adjust."
With respect to the right handrail, Westinghouse's maintenance records show only that on March 9, 1989, its servicemen performed *542 preventative maintenance on the right handrail. There is no indication that the right handrail ever stopped previously, much less while the escalator continued running, as alleged by plaintiff.
In granting a judgment of involuntary dismissal in favor of Westinghouse the trial court reasoned that Moss's expert testimony amounted only to a "net opinion" and therefore, should be stricken from evidence, stating:
It is unusual in a case like this that the expert would not come in with some type of drawing and say you see this cog, this was broken and they should have repaired this. Or you see this piece of metal, it wasn't strong enough and it should have been made of a stronger design. Or you see this pulley, it wasn't tight enough, it was too loose. Or the gears should have been close together. Something mechanical above the ability of a normal juror to understand which points with specificity to a defect.
Moss's testimony has the same maladies found to be fatal to the expert opinions in Nesmith v. Walsh Trucking Co., 123 N.J. 547, 589 A.2d 596 (1991); Vuocolo et rel Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 573 A.2d 196 (App.Div.), certif. denied, 122 N.J. 333, 585 A.2d 349 (1990); and Pelose v. Green, 222 N.J. Super. 545, 537 A.2d 745 (App.Div.), certif. denied, 111 N.J. 610, 546 A.2d 530 (1988).
Moss conceded he could only speculate as to what actually occurred and, like the expert in Pelose, could only offer in the most general terms that defendants must have been at fault simply because the event happened. See Pelose, supra, 222 N.J. Super. at 550, 537 A.2d 745. This speculation was properly rejected by the trial court even though it was "surrounded by expertise." Id. Although Moss did purport to identify relevant safety standards, he never explained how Westinghouse deviated from those standards or provided facts to support his opinion. Thus, Moss's opinion was no better than that of the expert in Nesmith, who offered no basis from the factual record for his opinions. Nesmith, 123 N.J. at 549, 589 A.2d 596. Finally, since Moss could not specify any conduct of Westinghouse which caused the incident, his testimony was worth no more than that of the Vuocolo expert in that it was comprised of guesswork and conjecture. See Vuocolo, 240 N.J. Super. at 299-300, 573 A.2d 196.
*543 In sum, Moss offered the opinion that Westinghouse must have been at fault because it was under contract to maintain the escalator. In offering his opinion Moss demonstrated no expertise; he merely stated what any lay person without any expert knowledge might guess was a potential cause. His testimony is nothing more than an effort to shift the burden of proof to defendants by suggesting that the mere fact of an incident is indicative of Westinghouse's negligence. Therefore, his testimony is mere net opinion properly stricken by the trial judge.

II.

WAS RES IPSA LOQUITUR APPLICABLE?
Plaintiff argues that she is entitled to have her case against Bally's and Westinghouse presented to the jury on a res ipsa loquitur theory because the escalator malfunction she described is an aberration from normal operation. Plaintiff contends that she does not need to prove the precise cause of the accident because the facts herein warrant application of the doctrine under Pisano v. S. Klein on the Square, 78 N.J. Super. 375, 395, 188 A.2d 622 (App.Div.), certif. denied, 40 N.J. 220, 191 A.2d 61 (1963), and Lorenc v. Chemirad Corp., 37 N.J. 56, 62, 179 A.2d 401 (1962).
In the ordinary case, negligence is never inferred; it must be proven. Buckelew, supra, 87 N.J. at 525, 435 A.2d 1150. Res ipsa loquitur, however, permits a plaintiff the advantage of an inference of negligence to discharge the burden of proving negligence. Vespe v. DiMarco, 43 N.J. 430, 436-37, 204 A.2d 874 (1964). The doctrine, however, does not shift the burden of proof to the defendant. Eaton v. Eaton, 119 N.J. 628, 638, 575 A.2d 858 (1990).
The three elements which must be established before res ipsa loquitur applies are as follows:
"(1) the accident which produced a person's injury was one which ordinarily does not happen unless someone was negligent, (2) the instrumentality or agent which caused the accident was under the exclusive control of the defendant, and (3) the *544 circumstances indicated that the untoward event was not caused or contributed to by any act or neglect on the part of the injured person."
[Eaton v. Eaton, supra, 119 N.J. at 638, 575 A.2d 858 (quoting Lorenc v. Chemirad Corp., supra, 37 N.J. 56, 70, 179 A.2d 401 (1962)).]
The first factor, which is referred to as the "ordinarily bespeaks negligence" factor, means that the plaintiff must show that the "balance of probabilities" weighs "in favor of negligence" on the defendant's part. Id. at 638-39, 575 A.2d 858. See also Buckelew, supra, 87 N.J. at 526, 435 A.2d 1150. Examples of instances which bespeak negligence are "an automatic door closing like a vise upon a person attempting to enter an elevator," Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 669, 630 A.2d 402 (App.Div. 1993), or "the collapse of a stairway," Brown v. Racquet Club of Bricktown, 95 N.J. 280, 287, 471 A.2d 25 (1984), or the unexplainable departure of a car from the roadway, Eaton v. Eaton, supra, 119 N.J. at 639, 575 A.2d 858.
An example of an accident which does not bespeak negligence is offered by Dombrowska v. Kresge-Newark, Inc., 75 N.J. Super. 271, 274-75, 183 A.2d 111 (App.Div. 1962). There, plaintiff fell down an escalator after experiencing what she described as a "jerk" or "vibration." The incident was uncorroborated by eyewitnesses or expert testimony, and thus there was insufficient evidence for a jury to reasonably infer that defendant was negligent. Id. at 275.
The requirement for expert testimony in complex instrumentality cases results logically from New Jersey law that res ipsa loquitur is inapplicable where the injured party fails to exclude other possible causes of the injury. See Hillas v. Westinghouse Electric Corp., 120 N.J. Super. 105, 114, 293 A.2d 419 (App.Div.), certif. denied, 62 N.J. 82, 299 A.2d 80 (1972) (citing Jakubowski v. Minnesota Mining and Mfg., 42 N.J. 177, 183, 199 A.2d 826 (1964)). While the plaintiff need not reduce altogether the possibility of other causes, she must bring forth affirmative evidence that tends to "exclude other possible causes of the injury." Id. at 114, 293 A.2d 419.
*545 Clearly, then, a plaintiff is not entitled to bring her case to a jury under res ipsa loquitur any time there is an unexplained accident for which a defendant might plausibly be responsible. Rather, a plaintiff has the burden of producing evidence that reduces the likelihood of other causes so "that the greater probability [of fault] lies at defendant's door." Eaton, supra, 119 N.J. at 640, 575 A.2d 858 (quoting 2 F. Harper, F. James, & O. Gray, The Law of Torts, Section 19.7 at 46 (1986)). Only then may a jury properly draw an inference of negligence. Without an expert, or even with an expert whose testimony constitutes only a net opinion, the plaintiff has not excluded possible causes of the alleged incident and thus cannot take advantage of res ipsa loquitur.
In addition, a plaintiff relying on res ipsa loquitur must produce expert opinion that would guide the jury in determining whether the incident occurred, more likely than not, as a result of defendant's negligence. See Allendorf v. Kaiserman Enters., supra, 266 N.J. Super. at 668, 630 A.2d 402 (testimony of professional engineering expert that the cause of elevator doors closing on plaintiff was most likely attributable to failure of an electric eye safety device, which was known to be, inter alia, out of working order); Buckelew v. Grossbard, supra, 87 N.J. at 526, 435 A.2d 1150 (the circumstantial evidence must be sufficient to conclude that the balance of probabilities favors negligence); Dombrowska v. Kresge-Newark, Inc., supra, 75 N.J. Super. at 274-75, 183 A.2d 111 (expert testimony that a worn wheel mechanism can cause a "bumpy" motion in an escalator was insufficient proof of malfunction where no evidence was produced to show that any of the approximately 280 such wheels on the escalator in question was worn); Pisano v. S. Klein On the Square, supra, 78 N.J. Super. at 396, 188 A.2d 622 (plaintiff's proofs sufficient to invoke res ipsa loquitur when the jerk of an escalator was tied to probable malfunction by "detailed expert testimony").
We distinguished the outcome in Pisano from that in Dombrowska by emphasizing, inter alia, that in the latter, plaintiff *546 failed to present evidence to show that a jerk or vibration involved an unusual motion, while in the former case plaintiffs provided "detailed expert testimony ... [to] support[] their charge that the unusual operation of the escalator bespoke its malfunction." Pisano, 78 N.J. Super. at 396, 188 A.2d 622.
In addition, expert testimony is often necessary to afford the jury an understanding of the mechanical intricacies of the instrumentality. The expert may not be able to pinpoint the causal negligent act, but must be instrumental in providing an explanation in lay terms of the possible ways in which the accident could have occurred in order to inform the jury how the accident more likely than not was attributable to defendant's negligence. See Rose v. Port of New York Auth., 61 N.J. 129, 137-38, 293 A.2d 371 (1972) (plaintiff's proofs properly went to jury where he produced expert testimony that, although not explaining the precise nature of the malfunction that caused automatic elevator doors to close on plaintiff, offered explanations that suggested defendant's fault); Scanlon v. General Motors Corp., 65 N.J. 582, 596-97, 326 A.2d 673 (1974) (defendant's motion for judgment at the close of all the evidence properly granted in the absence of expert testimony that would have guided jury's understanding as to why car suddenly accelerated); Consalo v. General Motors Corp., 258 N.J. Super. 60, 67, 609 A.2d 75 (App.Div.), certif. denied, 130 N.J. 597, 617 A.2d 1220 (1992) (motion for involuntary dismissal was appropriately granted where plaintiff's expert could offer no explanation of sudden acceleration of car).
To permit this case to go the jury would be inimical to the holdings of Dombrowska and Pisano, which highlight the need for expert testimony to establish a circumstantial case. Here the jury would be required to engage in "sheer speculation" as to the potential causes of the alleged malfunction, Dombrowska, supra, 75 N.J. Super. at 274-75, 183 A.2d 111. As the trial court appropriately queried:
Why didn't Mr. Moss tell this jury there are only  I'll make up the numbers for sake of this argument  five causes for the handrail to stop. I am going to explain *547 the five causes to you, and I'm going to knock out why it couldn't be three. It must have been one of the other two. Why didn't he do that?
Moss's testimony falls woefully short of the requirement of "detailed expert testimony" required in complex instrumentality cases and therefore was merely a net opinion. In addition, plaintiff failed to eliminate the possibility of other causes to show "that the balance of probabilities favors" Westinghouse's negligence.
Bally's contends that res ipsa loquitur cannot be applied against it because it relinquished control of the escalators to Westinghouse. Westinghouse signed an exclusive maintenance agreement for maintenance of the escalator. As a result, many of the settings in the escalator were done in Westinghouse's factory and could only be affected, if at all, by a Westinghouse employee with access to the internal mechanism.
Therefore, with respect to Bally's, plaintiff did not satisfy the second prong of the res ipsa loquitur test, i.e., exclusive control by the defendant.
The "exclusive control" (second) prong does not require that a plaintiff "exclude all other possible causes of an accident as a condition of entitlement to the doctrine, provided he can show that it is more probable than not that the defendant's negligence was a proximate cause of the mishap." The evidence must merely afford a rational basis to conclude that defendant's control over the instrumentality was such that some act of negligence on defendant's part was a contributing cause of the resulting accident.
[Bahrle v. Exxon Corp., 279 N.J. Super. 5, 35, 652 A.2d 178 (App.Div.) 1995), certif. granted sub nom., 140 N.J. 326, 658 A.2d 726 (1995) (citations omitted).]
Finally, the third requirement for the res ipsa loquitur doctrine is that plaintiff did not cause or contribute to the accident. Although plaintiff, arguably, may have satisfied this requirement based upon the conflicting testimony and the videotape, we need not decide this issue.
Thus, the trial court correctly concluded that plaintiff did not satisfy the requirements for res ipsa loquitur and she had not proved the negligence of either Bally's or Westinghouse.

*548 III.
A landlord or building owner, such as Bally's, owes a nondelegable duty to invitees to exercise reasonable care in the upkeep of its property. Mayer v. Fairlawn Jewish Ctr., 38 N.J. 549, 555, 186 A.2d 274 (1962).
Plaintiff argues that because Bally's has a nondelegable duty to its casino patrons to exercise reasonable care, Bally's should not have been granted an involuntary dismissal. While the statement of duty is true, it begs the real legal issue regarding the reason Bally's was dismissed, i.e., was there evidence of breach of the standard of care?
Bally's hired a company, whose competence has never been questioned, to maintain exclusive control of its escalators. At the trial, plaintiff failed to offer any proof that Bally's breached the duty it owed to plaintiff as a patron of its casino. During argument after all the testimony, plaintiff's counsel acknowledged that "[t]here is no evidence of negligence" on the part of Bally's.
Even accepting as true all facts and reasonable inferences in favor of plaintiff, there is no prima facia negligence case against Bally's on this record and, therefore, the trial court properly granted Bally's motion for an involuntary dismissal. Furthermore, Bally's was not a guarantor of the safety of everyone who used its escalators.
Affirmed.
NOTES
[1] At oral argument, we were advised that the indemnification issue between Bally's and Westinghouse has been settled and therefore defense of both is now made by Shanley & Fisher.