895 So.2d 1103 (2005)
SCHINDLER ELEVATOR CORPORATION, a Delaware corporation, Appellant,
v.
Jacqueline CARVALHO, Appellee.
No. 4D03-4980.
District Court of Appeal of Florida, Fourth District.
January 19, 2005.
John R. Hargrove and Carol A. Gart of Gordon Hargrove & James, P.A., Fort Lauderdale, for appellants.
Daniel E. Jacobson and Michael B. Nipon, Delray Beach, for appellee.
*1105 WARNER, J.
A shopper, Jacqueline Carvalho, was injured when riding on an escalator. She sued Schindler Elevator Company, the escalator maintenance company, and Sears Roebuck, the store in which she was injured, for negligence.[1] Carvalho alleged that an escalator malfunction caused her to fall and sustain injuries. Schindler moved for a directed verdict on the ground that Carvalho did not prove her theory that Schindler's failure to maintain the escalator handrail resulted in a malfunction. While the trial court denied the motion, we reverse, concluding that even if the evidence was sufficient to show a lack of maintenance, Carvalho failed to prove how any lack of maintenance was a legal cause of the accident and injury.
Carvalho was shopping in a Sears store with a friend, Doreen Picone. As they approached the escalator to go to the second floor, they both noticed that the down escalator was stopped. They both saw a man on his knees at the bottom of the down escalator, but did not observe what he was doing. Carvalho and Picone continued to the second floor where they shopped. When they finished, they noticed that the down escalator was working, and they proceeded to descend to the first floor on the escalator.
About a quarter of the way down, they both felt a jerk, like a switch was turned off and on. Carvalho testified that this lasted for one or two seconds. Neither Carvalho nor Picone could testify whether the stairs, the handrail, or both stopped. The stopping caused Carvalho to tumble down the stairs, resulting in her injuries.
After the accident occurred, Bernard Sobol, a Sears manager, arrived on the scene. Picone told him that she had felt a "sudden surge" and that Carvalho fell forward. Sobol testified that the down escalator had not been shut down because such an event would have been reported to him.
At the time of the accident, Sears contracted with Schindler for the maintenance of the elevators and escalators. The contract required Schindler to maintain, repair, and test the escalators on a regular basis. It also required Schindler to keep a log book of all maintenance and repair work.
Immediately following the accident, Sears called Schindler to send someone out to inspect the escalator. The Schindler employee inspected the escalator for approximately twenty-five minutes and did not find any problems. He then shut it down to permit the regular maintenance employee to examine it. The regular technician inspected it the next day, checked several different components, and found everything in good order. At trial, he admitted that he did not check every part. However, he had serviced the handrail just six days prior to the accident. A state inspector checked the escalator approximately two months before the accident and did not find any problems.
On cross-examination the regular technician identified the maintenance log book. The log book did not contain a record of all maintenance and repair work. For instance, it did not record several work reports three months earlier for handrail problems on the escalator. The log book also did not show required regular maintenance of several components. The technician testified that he thought he checked the escalator more times than the log book indicated that he did.
Carvalho called Carl White as her escalator expert. White was formerly employed by Westinghouse Elevator Corporation, the manufacturer of the escalator in *1106 question. He investigated escalator accidents for Westinghouse. While his qualifications to testify were strenuously questioned, the court permitted him to testify as to the maintenance of escalators, over Schindler's objection as to its admissibility.
To formulate his opinion, White reviewed the depositions of Carvalho, Picone, the Sears managers, and the Schindler employees. He also examined the service records, work reports, and other documents regarding this particular escalator. He never personally examined the escalator involved in this case. Based on his review, he opined that the escalator malfunctioned at the time of the accident. However, consistent with the testimony of the Schindler technician, he agreed that the escalator did not stop, even though that was what Carvalho and Picone reported.
White testified that the lack of records demonstrated inadequate preventative maintenance which rendered the escalator in an unsafe condition at the time of the accident. However, he did not elaborate on how the maintenance would affect the escalator's operation. He simply opined, over objection, that if an escalator is properly maintained it will not malfunction. The most probable cause of the jolt Carvalho and Picone felt was a malfunction of the handrail, but he did not exclude the possibility of other things causing this reaction. Although it was his opinion that the handrail slowed or stopped, he could not explain what caused it to malfunction.
After the trial court denied the motion for directed verdict, Schindler presented its own expert who testified that if the handrail had stopped, a person holding the handrail would have his or her hand drawn back, and neither Carvalho nor Picone testified that their hands were pulled back. Schindler renewed its motion for directed verdict, which was denied. The jury returned a verdict in Carvalho's favor. From the judgment on that verdict, Schindler appeals.
White's opinion that a handrail malfunction caused the accident does not have a factual basis and did not provide evidence of negligence that was a legal cause of Carvalho's injuries. White conceded that none of the witnesses testified that any slowing of the handrail occurred. He admitted that he did not know specifically what caused the handrail to malfunction. Not only did White ignore the facts in the record, he never explained how inadequate maintenance caused the handrail to malfunction, nor did he even explain how an escalator operates. The jury was never given even a rough understanding of the workings of the handrail and how lack of maintenance could cause it to malfunction, if indeed it did. Thus, his opinion was unsupported by the facts.
Our supreme court has explained that opinion testimony which contains conclusions or inferences not supported by the record is inadmissible.
It is elementary that the conclusion or opinion or [sic] an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.
Arkin Constr. Co. v. Simpkins, 99 So.2d 557, 561 (Fla.1957). Illustrative of this point is D'Avila, Inc. v. Mesa, 381 So.2d 1172, 1173 (Fla. 1st DCA 1980), where a plaintiff's expert testified that the plaintiff's asthma resulted from an unsafe concentration of hazardous particles in the air. However, there was no evidence that air contamination existed. Likewise, White *1107 assumed that the handrail malfunctioned when there was no evidence presented that it did.
This case is remarkably similar to Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 670 A.2d 24 (Ct.App.Div.1996). There, a plaintiff was injured while ascending an escalator when the handrail stopped. Unlike the facts of this case, there was visual evidence that the handrail actually stopped. At trial, plaintiff called an expert safety engineer who opined that the "ultimate cause" of the accident was "that the preventative maintenance wasn't properly done." 670 A.2d at 26. The expert's testimony parallels White's testimony in this case:
He opined that, had there been proper preventive maintenance the handrail would not have stopped, nor would escalator # 1 have had three other recent problems involving the handrail. He concluded that the stopping of a handrail in normal operation while the steps continue to rise would not occur if there was due care in the maintenance. Moss could not, however, specifically articulate any mechanical root problems which caused the handrail failure, nor could he describe what type of work would be required to correct this so-called mechanical problem. Moss did not ask plaintiff for her version of the accident, and he did not view the accident scene. His entire expert opinion was based on his experience, the repair record of the escalator, the testimony of the people who worked on the escalator, and the videotape.
Id. at 26-27. In Jimenez, the trial court granted an involuntary dismissal at the close of the plaintiff's case because the expert's testimony was insufficient to sustain the plaintiff's claim.
On appeal, the plaintiff argued that the expert's opinion did not constitute a forbidden "net opinion" under New Jersey law, which means a bare conclusion unsupported by factual evidence. The appellate court affirmed, concluding that the opinion was indeed a net opinion. "In essence, the net opinion rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion." Id. at 27. Florida follows the same principle. See Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966); Bratt ex rel. Bratt v. Laskas, 845 So.2d 964, 966 (Fla. 4th DCA 2003).
The New Jersey court explained how the opinion that inadequate maintenance caused the handrail malfunction was a bare conclusion.
While plaintiff's counsel concedes in his brief that "Moss was unable to pinpoint the exact cause of the right handrail stopping," he argues on appeal that Moss's testimony is not a net opinion since Moss concluded that Westinghouse's improper preventative maintenance caused the condition which triggered plaintiff's accident and injuries. Moss could not explain why the preventative maintenance in this case was inadequate. He did not even explain how improper maintenance could lead to a mechanical problem that would cause a handrail to stop. Moss had to concede that he could only "guess" what caused the handrail to stop. In the end, all Moss said was that escalator handrails do not stop unless there has been improper maintenance. Even in offering this bare opinion, Moss did not explain why other general theories of liability as easily identifiable as "improper maintenance," e.g., design or manufacturing defects, were not the alleged root problem.
Jimenez, 670 A.2d at 27-28. If we substituted "White" for "Moss," the New Jersey court could have been referring to the testimony of the expert in this case. We agree with the reasoning of Jimenez. See *1108 also Gentes v. Mass. Bay Transp. Auth., 17 Mass. L. Rptr. 151 (Mass.Super.Nov.17, 2003) (granting defendant's motion for summary judgment as expert's opinions regarding the cause of escalator accident were not supported by the expert's deposition testimony or the facts in the record).
Carvalho argues that pinpointing the exact cause of an elevator malfunction is not fatal to the plaintiff's cause of action, citing Davis v. Otis Elevator Co., 515 So.2d 277 (Fla. 5th DCA 1987). Davis is distinguishable on its facts. There, an elevator malfunctioned by dropping fifteen inches as the plaintiff exited, causing injuries. Davis sued the elevator company on the theory of negligence. "Davis' expert testified that the bottom conductor switch was energized because something in the unit was `broken or shorted out or grounded' and that with appropriate maintenance the system would not have failed." 515 So.2d at 278. This provided evidence of the cause of the malfunction  something broken in the unit that caused a short. The expert testified that adequate maintenance would have corrected the problem. The court also noted that this was more akin to a res ipsa loquitur case, and the evidence was sufficient to go to the jury.
In contrast, there was no factual evidence that the handrail was the problem, only White's assumption. Even if there was evidence, White did not testify as to what could have caused the handrail to malfunction. His testimony was not nearly as specific as the testimony in Davis that something broke, causing a short. The jury was not informed as to what malfunctioned in the escalator and how that happened, either generally or specifically.[2]
Carvalho argues that even if the admission of White's testimony was error, it was harmless. We can hardly ascribe this as being harmless error. Although she claims that there was sufficient evidence to show a violation of section 399.02(5)(b), Florida Statutes (1997), which makes the escalator owner responsible for its safe operation, this section does not apply to Schindler who contracted with Sears to maintain the escalator. Further, Carvalho offered evidence that someone was working on the escalator shortly before the accident, but she did not identify the worker as a Schindler employee, and there was no evidence that he was. If this mystery party made some adjustment that caused a malfunction, that would not be Schindler's responsibility. This also shows why, unlike Davis, this is not a case for the application of res ipsa loquitur.
Finding that White's testimony was inadmissible, and that Carvalho failed to offer a prima facie case of negligence against Schindler, we reverse for entry of judgment in favor of Schindler.
GROSS, J., and SILVERMAN, SCOTT, Associate Judge, concur.
NOTES
[1] Sears ultimately settled with Carvalho and is not a party to this appeal.
[2] To give another example as to why White's testimony is inadmissible, we analogize this to an automobile accident, where the cause is unknown but must be the result of some mechanical defect. Evidence that the car was not properly maintained in accordance to the manufacturer's specification would hardly be proof that the maintenance caused the accident, e.g., that failure to put oil in the car every 5,000 miles somehow caused the accident. One would have to show how the failure to put oil in the car resulted in a mechanical failure that caused the accident.