MAY, J.
 

 In a failed real estate transaction, a developer appeals a final judgment in a dispute with an architect. Multiple issues on liability and damages are raised. We find merit in the developer’s argument that the trial court erred in admitting the architect’s expert testimony concerning damages as it lacked a proper factual foundation. For this reason, we reverse the judgment in favor of the architect and remand the case to the trial court for entry of a judgment for the developer.
 

 In 1994, the architect entered into a contract for the purchase of a 5.778-acre parcel of land in Juno Beach, Florida. The architect then entered into a consulting agreement, which provided for the developer to purchase the parcel and develop a condominium project. The architect assigned the original purchase contract to the developer, providing for the architect’s consulting firm, U.S. Project Management, to provide services for development of the parcel. The original plan called for a twelve-story building with 87 units. The architect was to receive monthly consulting fees, reimbursement of expenses, and an incentive fee for its services upon the sale of the units.
 
 [1]
 

 
 *867
 
 In 1995, the developer unsuccessfully attempted to obtain an easement from an adjoining landowner for a sewer line to serve the parcel. As a result, the developer purchased the adjoining 2.7 acres, and changed the project to include two buildings containing 64 units each on the larger combined parcels (the second project). A new consulting agreement was drafted, but never executed. Nevertheless, the architect continued to work on plans for the second project.
 

 In 1997, the developer abandoned the second project in favor of a third project, which included 120 units on both parcels, new architectural plans, and a new site plan approval. At this time, the developer stopped paying the architect. The architect subsequently filed suit for breach of contract, seeking payment of the monthly and incentive fees based on anticipated net profits on the sale of units for the second project even though the second project was never built.
 

 A non-jury trial was held in 1999. The trial court found for the developer. Specifically, the court found the architect had “not shown, by the greater weight of the evidence, that there was a breach of the contract nor causation of damages which meet the appropriate standard for recovering future profits where a contract has not been fully performed.” We affirmed the decision in
 
 U.S. Project Management, Inc. v. Parc Royale East Development, Inc.,
 
 773 So.2d 1163 (Fla. 4th DCA 2000).
 

 After all units in the third project were sold, the architect filed another breach of contract action against the developer for the same consulting agreement. This time the architect sought incentive fees based on profits from the third project.
 
 [2]
 
 The trial court found the cause of action barred by
 
 res judicata
 
 and dismissed the complaint.
 

 The consultant appealed; we reversed.
 
 U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.,
 
 861 So.2d 74 (Fla. 4th DCA 2003). In doing so, we found that, although the new complaint was based on the original consulting agreement, the claim for damages was based on a different project—the third project. “Due to the vagueness of the final judgment, as a matter of law, [we could not] say with certainty that the trial court intended the judgment to bar all claims for any possible subsequent breaches.”
 
 Id.
 
 at 77.
 

 On remand, the architect again sought lost profits for the third project located on both parcels. Alternatively, the architect sought lost profits on the sale of units for the third project located on the original parcel. The developer moved to dismiss the complaint, arguing that the consulting agreement did not apply to both parcels, and the final judgment from the first trial collaterally estopped the architect from seeking lost profits under the incentive fee provision. The trial judge granted the motion to dismiss “to the extent the Second Amended Complaint relie[d] on the Consulting Agreement for damages based upon Project III and/or a project located on a parcel that is not located on the [original parcel]....”
 
 [3]
 

 A jury found the developer breached the contract and awarded the architect $2.2
 
 *868
 
 million. The court entered a final judgment against the developer on its affirmative defenses and against the architect on its implied contract and promissory estop-pel claims. The trial court then denied the developer’s motions for judgment notwithstanding the verdict and for a new trial.
 

 On appeal, the developer argues the trial court erred in various rulings on liability and damages. We agree that error occurred in the court’s admission of expert testimony concerning damages.
 

 “A trial court’s decision regarding the admissibility and scope of expert testimony is reviewed for an abuse of discretion.”
 
 Wynkoop v. State, 14
 
 So.3d 1166, 1170 (Fla. 4th DCA 2009). “[0]pin-ion testimony which contains conclusions or inferences not supported by the record is inadmissible.”
 
 Schindler Elevator Corp. v. Carvalho,
 
 895 So.2d 1103, 1106 (Fla. 4th DCA 2005).
 

 Here, the expert’s opinion contained conclusions and inferences that were unsupported by the facts admitted into evidence. The expert’s damage calculations were based on a profit calculation for the third project, consisting of 120 units, reduced to a profit figure for the original 87 units when the trial court previously dismissed the complaint to the extent that it was based on the third project or units built on property other than the original parcel.
 

 During the proffer of the expert’s testimony, the expert prorated the third project’s 120-units to 87 units because he was told that an incentive fee might be allowed only for the 87 units that were planned for the original parcel. The developer objected to the testimony because it concerned the third project and the architect was attempting to admit evidence through the back door that the trial court had previously ruled was inadmissible. The court then stated:
 

 Let’s go back to why we’re here. The motion in limine as I recall was whether or not he would be entitled to testify as to Design Three. The problem is the jury is the one that’s going to have to decide. So if they don’t believe that the contract included Design Three then they are free to discount the numbers that he comes up with, but otherwise I think they have to hear all three numbers.
 

 The developer’s attorney then reminded the judge of the court’s prior ruling that the contract did not apply to any property beyond the original parcel. After a discussion, the court stated:
 

 My suggestion is that you ... figure out how to narrow it down to the one contract .... Because Design Three is not supposed to be in [ ] here, [ ] no matter how you told him to calculate it. So you need to figure it out with your expert and make sure that nothing gets blurted out that’s going to cause a mistrial because sure as shooting the way this is coming out now; that’s a fiction, quite frankly, what you’re asking him to calculate ....
 

 The expert then testified that under the incentive fee provision for the original parcel, $1,395,238 was owed to the architect for profits realized on the sale of 87 condominiums, plus interest. On cross examination, the expert explained that $870,000 was owed under the incentive fee provision and the interest was $574,407.
 

 This testimony was not derived from facts in evidence, and the expert’s methodology was never explained to the jury because the trial court had already ruled evidence concerning the third project was inadmissible. Yet, the trial court allowed the expert to testify to calculations and conclusions based upon the sale of units from the third project. It is in this ruling that the trial court erred.
 

 
 *869
 
 The original agreement called for incentive fees derived from the net profit of unit sales from the project. There simply was no evidence of the sales price, construction costs, or loan expenses for the third project, from which the expert could calculate incentive fees. Nor could the expert have relied on the sale of units from the third project to derive net profits based on the trial court’s prior ruling eliminating the third project from consideration. Because the expert’s testimony was unsupported by facts admitted into the record, the expert’s conclusions should not have been admitted.
 

 The court prevented the admission of evidence concerning the third project, yet inexplicably permitted the architect’s expert to testify to calculations based upon the sale of units from the third project. The expert could not justify his testimony or explain his method of calculation. “The proffer of expert opinion is not sufficient to eliminate the necessity of proving the foundation facts necessary to support the opinion.”
 
 Ullman v. City of Tampa Parks Dep’t,
 
 625 So.2d 868, 878 (Fla. 1st DCA 1993) (citing
 
 Harris v. Josephs of Greater Miami, Inc.,
 
 122 So.2d 561, 562 (Fla.1960)).
 

 This subject was the focus of much debate during the post-trial proceedings. The trial court was obviously concerned about how the jury could have reached the amount of damages. The court commented:
 

 [Tjhat’s the biggest stretch I have ever seen as far as how you came up with that. That jury could not possibly have come up with that. And if they did, it was not based upon evidence or the computation of that.
 

 I’m just telling you, it was not presented by way of evidence to the jury.
 

 The only explanation the architect’s attorney could give was that the jury took the profits from the sale of the 120 units in the third project and multiplied it by the percentage that 87 units had to the total 120 units. This number was then taken and extrapolated over time and interest added. Yet, there was no factual basis upon which the jury could base its decision. “[N]o weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning.”
 
 M.A. Hajianpour, M.D., P.A. v. Khosrow Maleki, P.A.,
 
 932 So.2d 459, 464 (Fla. 4th DCA 2006) (quoting
 
 Div. of Admin. v. Samter,
 
 393 So.2d 1142, 1145 (Fla. 3rd DCA 1981)). In short, such “net opinions” are impermissible.
 
 See id.
 

 We find the trial court abused its discretion by allowing the expert to testify to damages based upon a faulty factual foundation that the trial court had already declared to be inadmissible. This error allowed the jury to render a verdict unsupported by record evidence and in conflict with the trial court’s prior rulings. This verdict and judgment cannot be sustained. We therefore reverse the final judgment and remand the case to the trial court for entry of a judgment in favor of the developer.
 

 Reversed and Remanded.
 

 FARMER and HAZOURI, JJ., concur.
 

 [1]
 

 . The incentive fee provision provided: “Consultant shall receive a fee of three (3%) percent of the first five million ($5,000,000.00) dollars of new profit, and shall receive an additional (1%) percent, for each additional one million ($1,000,000.00) dollars in net profit realized in excess of $5,000,000.00....” The term of the contract was to continue until a final certificate of occupancy was issued.
 

 [2]
 

 . In May 1998, the developer began construction of the third project, completing the construction in May 2001. Sales of the units began in May 2000 and were completed in December 2002.
 

 [3]
 

 . The architect then amended the complaint to allege claims for breach of the consulting agreement, breach of an implied contract for profits, and promissory estoppel for the third project located on the original parcel and for the third project located on both parcels. The developer raised
 
 res judicata,
 
 collateral estop-pel, statute of limitations, statute of frauds, and failure of consideration as affirmative defenses.