DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DOROTHY ARCHER,**
Appellant,

v.

**TOWER HILL SIGNATURE INSURANCE COMPANY,**
Appellee.

No. 4D19-3702

[March 24, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE-18-4463 (21).

Paul B. Feltman of Alvarez, Feltman, Da Silva & Costa, PL, Coral Gables, and Justin Cernitz of Cernitz, Shanbron, LLC, Miami, for appellant.

Daniel M. Schwarz of Link & Rockenbach, P.A., West Palm Beach, and Paul S. Vicary of Zinober, Diana & Monteverde, P.A., Fort Lauderdale, Fort Lauderdale, for appellee.

LEVINE, C.J.

An insured appeals a final summary judgment on her claims for damage from a plumbing leak and a hurricane. The insured argues that a genuine issue of material fact remained as to whether the hurricane caused an opening in her roof through which water entered. The insured further argues that two endorsements to the insurance policy created an ambiguity such that a water damage exclusion did not apply to the plumbing leak claim. We find that the insured's affidavits and deposition were conclusory and insufficient to create a genuine issue of material fact as to the roof claim. We further find that the endorsements were not ambiguous and thus the water damage exclusion barred the plumbing leak claim. We affirm without comment the insured's claim relating to underpayment for hurricane damage to her pool screen and fence.

The insured had a homeowner's insurance policy with Tower Hill. The policy had a Water Damage Exclusion that was later superseded by two

endorsements: a Water Damage Exclusion Endorsement and a Special Provisions for Florida endorsement.

The Water Damage Exclusion Endorsement provided as follows:

**WATER DAMAGE EXCLUSION ENDORSEMENT**

For the premium charged, your policy is changed as follows:

. . . .

**SECTION I – EXCLUSIONS**

Paragraph **1.c. Water Damage** is deleted and replaced by the following:

**c. Water Damage**, meaning:

**(1)** Flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind;

**(2)** Water, water-borne material or sewage which backs up through sewers or drains or which overflows from a sump; or

**(3)** Water, water-borne material or sewage below the surface of the ground including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

**(4)** Accidental or intentional discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance,

**(5)** Water penetration through the roof system or exterior walls or windows whether or not driven by wind unless water penetration is a direct result of damage caused by wind or hail.  Water damage resulting from rain that

2

enters the insured dwelling through an opening that is a direct result of a "hurricane loss" is covered as a "hurricane loss" and is subject to the hurricane deductible stated in your policy declarations. Water damage subsequent to and as a result of an opening caused by wind or hail will be covered as a wind or hail loss provided that your policy includes coverage for wind or hail.

Direct loss by fire or explosion resulting from water damage is covered.

The Special Provisions endorsement provided:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SPECIAL PROVISIONS FOR FLORIDA**

. . . .

**GENERAL EXCLUSIONS**

. . . .

Exclusion **1.c. Water Damage** is deleted and replaced by the following.

**c. Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driving [sic] by wind;

(2) water, water-borne material or sewage which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

(3) water, water-borne material or sewage below the surface of the ground, including water which exerts pressure in or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

The insured, through her public adjuster, notified Tower Hill of two separate claims that occurred on two separate dates: a plumbing leak and roof damage from Hurricane Irma. After Tower Hill denied the claims, the insured filed a complaint against Tower Hill for declaratory relief as to the plumbing leak and breach of contract as to the roof claim. Tower Hill filed an answer and affirmative defenses, arguing that the policy excluded coverage for water damage.

Tower Hill moved for summary judgment, arguing that there was no damage to the roof caused by the hurricane and that the water damage exclusion excluded coverage for the damage alleged by the insured. In support of its motion, Tower Hill filed several affidavits, including the affidavit of its field adjuster who inspected the property. The field adjuster determined the roof was at least twenty years old. Tower Hill's field adjuster did not see any openings in the roof or any obvious wind-related damage to the roof.

Tower Hill also filed the deposition of the insured, who testified that she went to the house after Hurricane Irma and saw the ceiling had "come down on the floor" and "some of the rooms were soaked." She had someone seal cracks in the roof to stop the leaks. Prior to Hurricane Irma, she had someone else seal the roof "maybe once or twice," but it had been "a long time."

The insured filed a response in opposition to the motion for summary judgment and a cross-motion for summary judgment, relying on several affidavits as well as her own deposition. Dawkins's affidavit stated that he had previously resealed the roof and that after Hurricane Irma, he "observed wind damage to the roof," "cracks and openings to the roof," and "water damage to the interior of the Property which entered through openings from the roof." The affidavit of Leath—a person who according to the insured sealed cracks in the roof after Hurricane Irma—stated that he "observed water damage to the interior of the Property which entered through openings from the roof." The affidavit of the insured's public adjuster stated: "Based upon my inspection of Plaintiff's dwelling and my

4

years of experience as a public adjuster, the interior damages that I witnessed is consistent with damages that entered through openings created by Hurricane Irma."

After a hearing, the trial court entered summary judgment in favor of Tower Hill. The insured appeals.

The standard of review for summary judgment is de novo. *Volusia Ctny. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Id.* "[T]he burden of proving the absence of a genuine issue of material fact is upon the moving party." *Holl v. Talcott*, 191 So. 2d 40, 43 (Fla. 1966). "[O]nce there is a motion for summary judgment that is supported by affidavit or other factual showing, the burden shifts to the opposing party to show by appropriate means that genuine and material issues do remain to be tried." *Id.* at 42.

Hurricane Claim

The trial court properly entered summary judgment on the insured's Hurricane Irma breach of contract claim. The policy provided coverage for water damage only when wind or hail creates an opening through which the water enters. Tower Hill satisfied its initial burden of demonstrating no issues of material fact by submitting the affidavit of its field adjuster who did not see any openings in the roof through which water could have entered. The burden then shifted to the insured to show that genuine issues of material fact did remain to be tried. *Holl*, 191 So. 2d at 42.

The insured failed to meet her burden because her affidavits and deposition were conclusory. Conclusory statements which are framed in terms only of conclusions of law are not sufficient to prove the non-existence of a genuine issue of material fact. *Progressive Express Ins. Co. v. Camillo*, 80 So. 3d 394, 399 (Fla. 4th DCA 2012) (citing *Heitmeyer v. Sasser*, 664 So. 2d 358, 360 (Fla. 4th DCA 1995)).

The insured offered the affidavits of Dawkins and Leath as lay witnesses. Dawkins's affidavit did not describe the nature or appearances of the cracks and openings, what led him to believe the cracks and openings were caused by wind from Hurricane Irma, or the location of the cracks and openings on the roof. All Dawkins relates to seeing is "wind damage to the roof" and "cracks and openings to the roof." He does not explain how there is wind damage or how the damage was caused by the

wind. Merely reciting conclusory statements does not rebut the statements of Tower Hill's field adjuster. Similarly, Leath's affidavit did not set forth the basis for his knowledge or even state that the openings were caused by Hurricane Irma. Additionally, the insured's deposition did not say anything about openings on the roof.

The affidavit of the insured's public adjuster was also insufficient to show that a genuine issue of material fact existed as to the existence and cause of an opening in the roof. Section 90.702, Florida Statutes (2017), which codifies the *Daubert* standard, states:

> [A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

The affidavit did not say anything about the public adjuster's qualifications, training, education, or methodology. In fact, she never even stated that she saw any openings in the roof. The public adjuster did not expound on her observations or explain how she came to her conclusion, other than to cite her years of experience as a public adjuster. "[N]o weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning." *Parc Royale E. Dev., Inc. v. U.S. Project Mgmt., Inc.*, 38 So. 3d 865, 869 (Fla. 4th DCA 2010) (citation omitted).

The insured's evidence was unlike, for example, that in *Garcia v. First Community Insurance Co.*, 241 So. 3d 254, 257-58 (Fla. 3d DCA 2018), where the insured successfully opposed summary judgment by submitting an engineering report explaining that the dynamic force of the winds caused an opening in the roof by uplifting and debonding the shingles, causing damage to the underlayment through which rain was able to enter. *See also Ortega v. Citizens Prop. Ins. Corp.*, 257 So. 3d 1171, 1172-73 (Fla. 3d DCA 2018) (finding issue of material fact where deposition testimony stated that a tree branch went through the roof, creating a huge

6

hole, and affidavit of general contractor and engineer attested to uplift damage to roof from windstorm which allowed water to enter); *Frederick v. Citizens Prop. Ins. Corp.*, 45 Fla. L. Weekly D2750 (Fla. 3d DCA Dec. 9, 2020) (finding insured met burden of showing existence of triable issue by relying on affidavit, inspection report, and deposition of general contractor who concluded that roof leaks resulted from micro fissures in the roof caused by strong wind gusts and wind-driven rain).

<u>Plumbing Claim</u>

With respect to her plumbing leak claim, the insured argues that the trial court erred in applying the Water Damage Exclusion Endorsement because it conflicts with the Specific Provisions for Florida endorsement, creating an ambiguity in the policy. She further argues that the ambiguity should be construed in her favor to provide coverage.

"[W]e rely upon the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof." *Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all its terms is preferred to an interpretation which leaves a part of the contract unreasonable, unlawful or of no effect." *Raytheon Subsidiary Support Co. v. Crouch*, 548 So. 2d 781, 783 (Fla. 4th DCA 1989).

We find there is no ambiguity in the policy. The Water Damage Exclusion Endorsement and the Special Provisions endorsement both stated that they replace the Water Damage exclusion in the original policy. Additionally, there is no conflict between the two endorsements as the first three subsections are virtually identical in each endorsement. The Special Provisions endorsement includes two additional exclusions that supplement, and do not conflict with, the first three exclusions.

The insured alleges that the Special Provisions endorsement went into effect after the Water Damage Exclusion Endorsement. The insured suggests that because that the Water Damage Exclusion Endorsement is older, the newer water damage definition in the Special Provisions endorsement should apply. However, which endorsement came first, in this case, is irrelevant. Nothing in the second endorsement, the Special Provisions endorsement, suggests it was intended to supplant the first endorsement, the Water Damage Exclusion Endorsement. Rather, both endorsements replaced the Water Damage exclusion clause in the original policy. The use of two separate endorsement forms can be explained because one was intended for use in many states, whereas the other was specific to Florida, a practice that insurers commonly employ. *See Fla.*

*Peninsula Ins. Co. v. Cespedes*, 161 So. 3d 581, 587 (Fla. 2d DCA 2014) (Altenbernd, J., concurring in part and dissenting in part).

Because there is no conflict between the endorsements, the trial court properly gave effect to subsection (4) of the Water Damage Exclusion Endorsement, which excluded the plumbing leak from coverage.

In conclusion, because there were no issues of material fact on the hurricane damage claim and no ambiguity in the policy as to the plumbing leak claim, we affirm the final summary judgment.

*Affirmed.*

GROSS and ARTAU, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***