702 A.2d 1347

PETER VITRANO, AN INFANT BY HIS GUARDIAN AD LITEM, FRANK VITRANO AND FRANK VITRANO, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. DONALD SCHIFFMAN, M.D., MATTHEW FELDMAN, M.D., BERNARD ETRA, M.D., JOSEPH FRUCHTER, M.D., HERBERT COLE, M.D. AND ALVIN EDEL-STEIN, M.D., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1997—Decided December 1, 1997.

Before Judges BROCHIN, WEFING and BRAITHWAITE.

*William C. Rindone, Jr.* argued the cause for appellants (*Liebowitz & Liebowitz*, attorneys; *Alan M. Liebowitz*, of counsel; *Mr. Rindone*, on the brief).

*Wilfred P. Coronato* argued the cause for respondents Schiffman, Feldman, Etra and Fruchter (*McDonough, Korn, Eichhorn & Boyle*, attorneys; *Mr. Coronato*, on the brief).

*Gary L. Riveles* argued the cause for respondents Cole and Edelstein (*Dughi and Hewit*, attorneys; *Christopher J. Christie*, on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

In this medical malpractice case, plaintiffs [1], Peter Vitrano, an infant by his guardian ad Litem, Frank Vitrano, and Frank Vitrano, individually, appeal from a summary judgment granted to defendants Donald Schiffman, M.D., Matthew Feldman, M.D., Joseph Fruchter, M.D., and Alvin Edelstein, M.D. Plaintiffs do not appeal from summary judgment granted to Herbert Cole, M.D. Plaintiffs' claim against defendant Bernard Etra, M.D. was voluntarily dismissed.

Plaintiff was born on September 18, 1975, in Hackensack. From his birth until approximately age seven and then from age ten to fourteen, plaintiff received pediatric health care from Drs. Schiffman, Etra, Feldman and Fruchter. From March 1983 until

---

[1] Hereinafter "plaintiff" refers to Peter Vitrano.

October 1985, plaintiff was under the care of defendant pediatricians Drs. Cole and Edelstein.

When plaintiff was sixteen years old he complained of two lumps in his groin accompanied by abdominal pain and discomfort. He was examined by Joseph Vitale, M.D., who found the "[patient] had both testicles in his canals, not in *scrotum.*" Dr. Vitale diagnosed plaintiff with cryptorchidism, "a developmental defect of the testicles" that is present at birth. Dr. Vitale referred plaintiff to John F. Kerns, M.D., a urologist.

Dr. Kerns examined plaintiff and diagnosed bilateral undescended testes. In January 1992, he successfully performed orchiopexy surgery on plaintiff. Dr. Kerns described the procedure as "[u]sing sharp and blunt dissection, the cord was freed up and the testicle was dissected free. . . . a tunnel was made down into the scrotal sac and a small opening made in the scrotum." This procedure was completed on both the right and left testes. In his report dated December 15, 1993, Dr. Kerns stated that he found that both testes were undescended and "were found to be in the inguinal canal, and appeared to be of moderate size."

Plaintiffs commenced this litigation against defendants contending that they deviated from the accepted standard of medical care in failing to diagnose congenital undescended testes. Defendants essentially assert that it was impossible for all the board-certified pediatricians over so many years to have missed congenital undescended testes and, therefore, that the testes must have been descended but retractile, or plaintiff must have suffered from secondary ascent of the testes.

On a motion for summary judgment, the judge ruled that the opinion of plaintiffs' liability expert, Joseph A. Silverman, M.D., was a net opinion. She therefore determined that he would not be permitted to testify at trial. Plaintiffs were then given the opportunity to provide additional reports, which they did. After reviewing the additional reports the motion judge concluded that there was no genuine issue with respect to a material fact pursuant to *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520,

666 *A*.2d 146 (1995). Summary judgment was therefore granted to defendants and plaintiffs' complaint was dismissed.

Our review of the record convinces us that the trial judge erred in concluding that plaintiffs' expert's opinion was a net opinion. We are further satisfied that a genuine issue of material fact exists as to the liability of Drs. Schiffman and Feldman and therefore reverse the summary judgment granted to them. We affirm the summary judgment granted to Drs. Edelstein and Fruchter.

## I

We observe at the outset that Dr. Feldman's records show that he examined plaintiff at birth and noted that both of plaintiff's testes had descended. Further, upon plaintiff's discharge from the hospital, he was examined by Dr. Schiffman, who reported that plaintiff's testes were down or descended. During his childhood, plaintiff had routine doctor visits and was examined at least sixty times. One-fourth of these visits were for well-child checkups which required a full examination, including the testes.

On September 7, 1979, Dr. Feldman noted in plaintiff's records that his testes were "palpable but were carried high." The following year, Dr. Schiffman, on examination, noted that plaintiff had retractile testes. Between March 1983 and March 1985, plaintiff received a complete physical examination on four occasions. In each instance Dr. Edelstein noted that the examination was normal.

## II

Plaintiffs' expert, Dr. Silverman, opined that defendants were negligent because they failed to diagnose the condition of undescended testes, a readily distinguishable condition. Essentially, he asserted that, despite defendants' records, they either failed to examine plaintiff or examined plaintiff and failed to record plaintiff's condition. Dr. Silverman's opinion was based on the operative report of Dr. Kerns which revealed that plaintiff had a

bilateral orchiopexy, a surgical procedure that, according to Dr. Silverman, supports the conclusion that plaintiff suffered from congenital non-descended testes. Specifically, Dr. Silverman testified at his deposition that he concluded that plaintiff had undescended testes "because a surgeon had to operate on [plaintiff] to bring them down."

■ We are satisfied that Dr. Silverman's testimony and report do not constitute a net opinion. Our courts have addressed the issue of net opinions.

> Qualified expert opinion is admissible to assist the jury, *N.J.R.E.* 702, but there must be a factual and scientific basis for an expert's opinion. *Rubanick v. Witco Chemical Corp.*, 242 *N.J.Super.* 36, 45, 576 *A.2d* 4 (App.Div.1990), *modified on other grounds*, 125 *N.J.* 421, 593 *A.2d* 733 (1991). An opinion lacking in foundation is worthless. *Stanley Co. of America v. Hercules Powder Co.*, 16 *N.J.* 295, 305, 108 *A.2d* 616 (1954). When an expert's opinion is merely a bare conclusion unsupported by factual evidence, *i.e.*, a "net opinion," it is inadmissible. *Buckelew v. Grossbard*, 87 *N.J.* 512, 524, 435 *A.2d* 1150 (1981); *In re Yaccarino*, 117 *N.J.* 175, 564 *A.2d* 1184 (1989). In essence, the net opinion rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion. As the Supreme Court stated, this rule "frequently focuses ... on the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom." *Buckelew, supra*, 87 *N.J.* at 524, 435 *A.2d* 1150. Where ... an expert offers an opinion without providing specific underlying reasons for the alleged malfunction, he ceases to assist the trier of fact and becomes nothing more that an additional juror.
>
> [*Jimenez v. GNOC, Corp.*, 286 *N.J.Super.* 533, 540, 670 *A.2d* 24 (App.Div.) (parallel citations omitted), *certif. denied*, 145 *N.J.* 374, 678 *A.2d* 714 (1996). *See also Rubanick, supra*, 242 *N.J.Super.* at 48–51, 576 *A.2d* 4 (discussing net opinions).]

■ Dr. Silverman's opinion is not a net opinion because it is based upon the facts contained in the surgical report of Dr. Kerns. Further, the fact that Dr. Silverman's opinion is contrary to defendants' medical records and to some extent the testimony of plaintiff and his mother, who both say plaintiff's testes were examined during visits to defendants, does not make it a net opinion. A medical expert has the ability to opine that the records he examined were incorrect provided that the opinion is grounded in medical evidence present in the record. Here, that is what occurred and Dr. Silverman should have been permitted to testify.

## III

■ We next address the summary judgment granted to Drs. Schiffman and Feldman. In light of our conclusion that the motion judge erred in precluding Dr. Silverman from testifying, we are satisfied that his opinion creates "a genuine issue with respect to a material fact challenged...." *Brill, supra,* 142 *N.J.* at 523, 666 *A.*2d 146.

Here, Dr. Silverman's opinion "presents a sufficient disagreement to require submission to a jury...." *Id.* at 533, 666 *A.*2d 146 (citation omitted). Further, in light of the admissibility of Dr. Silverman's expert opinion, the evidence is not "so one-sided that [Drs. Schiffman and Feldman] must prevail as a matter of law." *Id.* at 533, 666 *A.*2d 146 (citation omitted).

> [W]hen deciding a motion for summary judgment under *Rule* 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. This assessment of the evidence is to be conducted in the same manner as that required under *Rule* 4:37–2(b).
>
> [*Id.* at 523, 666 *A.*2d 146.]

When deciding motions pursuant to *Rule* 4:37–2(b), plaintiffs' proofs must be treated "as uncontradicted, both as to liability and damages." *Evers v. Dollinger,* 95 *N.J.* 399, 402, 471 *A.*2d 405 (1984); *see Dolson v. Anastasia,* 55 *N.J.* 2, 5, 258 *A.*2d 706 (1969). "[T]he court must look at the evidence and, the inferences which may reasonably be deduced therefrom in a light most favorable to the plaintiff, and if reasonable minds could differ as to whether any negligence has been shown, the motion[ ] should be denied." *Bell v. Eastern Beef Co.,* 42 *N.J.* 126, 129, 199 *A.*2d 646 (1964).

Drs. Schiffman and Feldman base their contention that the evidence is so one-sided that they must prevail as a matter of law upon their medical records and the other evidence developed during discovery that supports their position. For defendants to prevail on a motion for summary judgment because the evidence is

so one-sided in their favor means that the plaintiffs have failed to sustain their burden on each and every element necessary to establish their claim at trial. In other words, a party is entitled to summary judgment when the non-moving party has a fatal defect in his or her proofs at the time of the motion for summary judgment. A fatal defect is one that would preclude a jury from entering a verdict in favor of the non-moving party. *See R.* 4:37–2(b).

Even very strong evidence supporting a movant's claim presents only a jury question, assuming the non-movant's case is free of fatal defects. The motion judge is not permitted to evaluate the "preponderance or credibility" of the evidence presented by the parties. *Brill, supra,* 142 *N.J.* at 536, 666 *A.*2d 146. Rather, upon a defendant's motion for summary judgment, the motion judge is only to sift through and analyze the evidential materials to ensure that there is sufficient evidence to support each required element of a plaintiff's claim. Assessing the credibility or weight of the evidence is strictly a jury task.

"In terms of the nature of the inquiry, this is no different from the consideration of a motion for acquittal in a criminal case, where the beyond-a-reasonable-doubt standard applies and where the trial judge asks whether a reasonable jury could find guilt beyond a reasonable doubt." *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986); *see State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967). In the criminal context, if the State has produced evidence on all the elements of the crime, the motion must be denied. *See State v. Brown,* 80 *N.J.* 587, 592, 404 *A.*2d 1111 (1979). Likewise, from a review of the evidential materials in the summary judgment context, if the plaintiff has produced evidence of each element of his or her claim the motion for summary judgment must be denied. The motion judge's inquiry is whether reasonable jurors could find, using the applicable evidential standard, that the plaintiff is entitled to a verdict in his or her favor. *Brill, supra,* 142 *N.J.* at 523, 666 *A.*2d 146. Here, the jury could return a

verdict in plaintiffs' favor if it believes their proofs. Summary judgment for Drs. Shiffman and Feldman must therefore be reversed.

## IV

■ We affirm the summary judgment granted to Drs. Fruchter and Edelstein. The record is clear that both Drs. Edelstein and Fruchter only saw plaintiff after he was five years old. Plaintiffs' expert was unable to express with a reasonable degree of medical probability any opinion that Drs. Fruchter's and Edelstein's failure to diagnose undescended testes in plaintiff after he was five years old caused any injury to plaintiff. At Dr. Silverman's deposition, the following colloquy took place:

> Q. So if Dr. Fruchter only saw the patient at some point after the age of five and didn't diagnose undescended testes, you're unable to say to a reasonable degree of medical probability whether or not the deviation from accepted standards of care cause Peter Vitrano any injury?
>
> A. I don't know the answer. As I say, the problem is that we know that people who have had undescended testes, whether they're brought down or not, eventually have a higher chance of developing malignancy. So it's very difficult to answer that.
>
> Q. You cannot answer the question one way or the other?
>
> A. That is correct. There are two problems. One is the problem of infertility. The other is the problem of malignant disease.
>
> Q. And although you can't answer to a certainty, you can't even answer to a degree of probability?
>
> A. All I can say is the earlier you do, the better it is for the patient.
>
> Q. All right. But with respect to my question, you cannot say to a reasonable degree of medical probability?
>
> A. I'm not qualified to say. Urologist is.

■ "In order for a plaintiff to prevail, in addition to showing that the defendant was negligent, he must prove that the defendant's negligence was a proximate cause of his loss." *Kulas v. Public Serv. Elec. and Gas Co.*, 41 *N.J.* 311, 317, 196 *A.*2d 769 (1964). "The foundation for an expert witness's opinion that the deviation caused the patient's injuries, however, is that the causal connection is a reasonable medical probability...." *Bondi v. Pole*, 246 *N.J.Super.* 236, 240, 587 *A.*2d 285 (App.Div.1991).

"[M]edical-opinion testimony must be couched in terms of reasonable medical certainty or probability; opinions as to possibility are inadmissible." *Johnesee v. Stop & Shop Cos., Inc.*, 174 *N.J.Super.* 426, 431, 416 *A.*2d 956 (App.Div.1980) (citations omitted). Here, as to Dr. Fruchter and Dr. Edelstein, no such expert opinion is provided.

We affirm in part, reverse in part and remand for further proceedings.