**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0228-17T4

JOSEPH GARGUILO,

      Plaintiff-Respondent,

v.

TRI-STATE CLASSIC CAR
RESTORATION,

      Defendant/Third-Party
      Plaintiff-Appellant,

v.

SINE-TRU TOOL CO., INC.,

      Third-Party Defendant-Respondent.

_____

> Argued November 28, 2018 – Decided December 11, 2018
>
> Before Judges Nugent and Mawla.
>
> On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. DC-008812-16.
>
> Christina Vassiliou Harvey argued the cause for appellant (Lomurro, Munson, Comer, Brown & Schottland, LLC, attorneys; Donald M. Lomurro and

Christina Vassiliou Harvey, of counsel and on the briefs).

James J. Kinneally, III argued the cause for respondent Joseph Garguilo (Marriott Callahan & Blair, PC, attorneys; James J. Kinneally, III, of counsel and on the brief).

PER CURIAM

Defendant Tri-State Classic Car Restoration (Tri-State) appeals from an August 2, 2017 judgment, entered in favor of plaintiff Joseph Garguilo, finding Tri-State violated the Consumer Fraud Act (CFA) by concealing damage to a vehicle defendant repaired for plaintiff. We affirm.

The following facts are taken from the record. Defendant is a classic car restoration shop owned by Eugene Chillemi. In July 2013, plaintiff purchased a 1971 Z/28 Camaro from Eugene's[1] father, Michael Chillemi. Plaintiff drove the vehicle for approximately two weeks until an engine fire damaged it. Plaintiff had the car towed to defendant and inspected by plaintiff's insurance company, which covered the costs for defendant to make the necessary repairs.

After the repairs were completed, defendant discovered a noise coming from inside the motor. With approval from plaintiff's insurance company,

---

[1] We utilize Eugene Chillemi's first name to differentiate him from his father. We mean no disrespect.

A-0228-17T4

defendant inspected the vehicle and concluded it required an engine rebuild. Defendant obtained an estimate for the work from a third-party, Sine-Tru Company (Sine-Tru). Defendant provided the estimate to plaintiff's insurer, which approved the engine rebuild.

Defendant removed the engine from the vehicle and delivered it to Sine-Tru, which stripped and power washed the engine, and performed the rebuild to plaintiff's specifications. Pertinent to this appeal, Kenny Klewan, the owner of Sine-Tru, testified there was no crack in the engine block when he inspected it after it was power washed.

After the rebuild, Sine-Tru returned the engine to defendant to be reassembled and installed in the vehicle. According to Eugene's testimony, defendant "put the carburetor on, . . . primed the motor, checked the oil pressure in the motor, and . . . put the motor in the car." Defendant then put the alternator and spark plugs back on the vehicle, set up the car's wiring and the radiator, and tuned the engine once it was running.

Importantly, plaintiff and Eugene corresponded regarding the progress of the vehicle's reassembly while it was in defendant's possession. On one such occasion, Eugene sent plaintiff a picture of the vehicle's freshly painted tailshaft depicting a roll of blue painter's tape covering the end of the tailshaft.

After defendant completed the work on the vehicle it was returned to plaintiff in March 2014. In September 2014, plaintiff noted a noise in the motor and brought the vehicle back to defendant. The car was then transported to Sine-Tru, which performed work on the engine, including the crankshaft. Sine-Tru also installed a new clutch and painted the transmission. Defendant then performed a five-hundred mile break-in procedure before the vehicle was returned to plaintiff.

Plaintiff continued to experience problems with the vehicle after it was returned to him. He noted the presence of metal flakes in the oil during an oil change. He sent pictures of the metallic flakes to defendant, who assured him it was not unusual. Plaintiff noted the smell of engine coolant, and when he examined the engine he noticed a "bubble in the paint on the engine block," which deposited coolant when he put pressure on it.

Plaintiff brought the vehicle to A&W Performance (A&W), which inspected it and discovered a crack in the engine block. A&W removed the paint on the engine and discovered evidence someone had applied an epoxy-like substance in the area of the crack in an attempt to repair it. A&W replaced the entire engine because the crack in the engine block could not be repaired. A&W

4

also discovered the tailshaft was cracked. The tailshaft also showed signs of attempted repairs with an epoxy-like substance and a hoseclamp.

At trial, Eugene, on behalf of Tri-State, and Klewan, on behalf of Sine-Tru, claimed to be unaware of the crack in the engine block. Eugene denied the roll of painter's tape covering a portion of the tailshaft in the picture sent to plaintiff was intended to conceal the crack and the hoseclamp. Plaintiff claimed otherwise.

Plaintiff presented expert testimony from Jason Phillips. According to his testimony, Phillips has owned an auto appraisal business, Auto Appraise, Incorporated, since 1991. Phillips became an ASE-certified mechanic in 1981 and had experience rebuilding engines. Phillips testified he currently employs approximately three-hundred subcontractors who perform inspections, mostly on classic cars, nationwide. He testified he is currently employed "full-time [to] inspect, appraise, and work for public and insurance companies doing a variety of tasks as they would relate primarily to classic cars." With respect to his business, Phillips testified:

> I have four employees, five including myself, that manage the . . . [three-hundred] plus or minus collective inspectors we have at any given time, and we go out onsite and do inspections on vehicles. Those inspectors in the field take photos and notes much like the industry of insurance works, like State Farm for example, who

A-0228-17T4

sends out a field inspector that assesses . . . the damage onsite, sends that back to headquarters. Headquarters . . . puts that report together, makes a decision to total the car or not, warranty companies to repair the car or not. And so we basically operate under the same work process as a warranty company or an insurance company.

. . . .

It started out as [one hundred] percent [classic cars], and as the market has changed and gravitated over the years, more and more we do late model total loss work, diminishment of value cases, estate work, et cetera. So you know, classic cars probably is somewhere between [fifty] and [seventy] percent of what we do now.

Phillips testified he had been qualified as an expert in the field of classic cars on several prior occasions. The trial judge qualified Phillips as an expert in the field of classic cars.

Phillips testified extensively regarding the damage to the vehicle and the attempted repairs involving the epoxy-like substance. He explained the difference in value between a vehicle whose parts bore the same serial number and those which did not, such as plaintiff's vehicle, which now had a new engine installed. He also opined as to the cause of the damage to the vehicle. Phillips explained he reviewed the photographs of the engine and tailshaft, and examined the components in person to form his opinion.

A-0228-17T4

Following a three day bench trial, the trial judge rendered an oral opinion and signed a judgment in favor of plaintiff on the second count of his complaint, which alleged defendant "violated [the CFA,] N.J.S.A. 56:8-2[,] by the omission of material facts when dealing with [p]laintiff concerning the subject vehicle." The second count also alleged "[d]efendant misrepresented and/or omitted material facts with the intent that [p]laintiff rely on such misrepresentation/omission." The judge found defendant had violated the CFA by concealing the cracks in the engine block and tailshaft.

The judge found plaintiff's testimony credible, and that his use of the vehicle did not cause the damage to the engine block or the tailshaft. The judge concluded the cracks in the engine block and in the tailshaft were likely caused by defendant. More importantly, the judge rejected Eugene's testimony as not credible and found defendant had affirmatively acted to conceal the cracks in the engine and the tailshaft by performing inadequate repairs with an epoxy-like substance and paint.

The judge emphasized the most damaging piece of evidence was the photograph defendant sent to plaintiff showing the freshly painted transmission and a roll of painter's tape covering the damaged tailshaft. The judge noted the picture showed the tailshaft was held together by epoxy and a hoseclamp.

7

Therefore, the judge concluded the placement of the painter's tape was not coincidental, but instead, demonstrated defendant was aware of the crack and acted to conceal it by using the tape to obscure a view of the damage.

The judge entered a judgment for $10,118.10, representing the cost to have A&W replace the engine. This sum was trebled pursuant to the CFA and then reduced to $15,000, representing the maximum award amount within the jurisdiction of the Special Civil Part. Following the submission of a certification of service by plaintiff's counsel, the judge also awarded $10,800 in counsel fees pursuant to the CFA. This appeal followed.

I.

The gravamen of this appeal challenges the trial judge's evidential rulings concerning the admission of expert testimony and reliance on photographic evidence. "[I]n reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion[.]" Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). Courts have uniformly endorsed this proposition. Ibid. (citations omitted).

The Supreme Court has stated:

> Evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis,

the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion. . . . Stated differently, then, the admissibility of evidence — one that is entrusted to the exercise of sound discretion — requires that appellate review, in equal measures, generously sustain that decision, provided it is supported by credible evidence in the record.

[Id. at 383-84.]

"[W]e apply the same deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Pomerante Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011) (citing Kuehn v. Pub Zone, 364 N.J. Super. 301, 319-21 (App. Div. 2003)). We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citing Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

A.

Defendant argues the trial judge erred when he denied defendant's in limine motion to bar Phillips from testifying. It asserts the judge abused his discretion when he considered the expert's testimony regarding the cause of damage to the vehicle because it was a net opinion. Defendant argues Phillips was not qualified to offer an expert opinion on this issue, because his curriculum vitae (CV) did not indicate experience in "automotive repair reconstruction." Defendant asserts "[e]xperience with automotive appraisals does not automatically give a party sufficient expertise to testify as to reconstructing damage to the automotive parts."

At trial, defendant's counsel moved in limine to bar Phillips from testifying on the grounds Phillips failed to state the basis of his opinions or the materials he reviewed to create the report. Counsel further argued the report did not include authoritative support and only referred "generally to authorities of industry standards, including ASE, ISO, or I-CAR."

Counsel argued Phillips offered no explanation to support his claims the repairs to the engine and tailshaft were amateurish, or evidence to demonstrate defendant had damaged the vehicle as opposed to the vehicle having been damaged before the car was purchased in "as is condition." Counsel argued the

A-0228-17T4

report did not prove defendant had "ever [seen] those parts, ever repaired those parts," and did not prove defendant had performed the repairs. Counsel also challenged Phillips' valuation methodology, arguing his report contained no market analysis to support his opinion on value.

The trial judge made extensive findings regarding Phillips' credibility and qualifications as an expert witness when he denied defendant's motion. The judge stated:

> I have a copy of . . . Phillips' report. It's dated December 28th, 2016. And it references in the report at — right on the first page, inspection of the original numbers-matching engine revealed amateur repairs were attempted and concealed to an irreparable engine block. So it would appear at first glance from looking at the report that he actually inspected the engine. It doesn't reference any photographs or anything to the like. It appears as if he inspected the engine. So, . . . it — certainly . . . could be flushed out on cross-examination, but that's what it says in his report. So one could — taking his report on face value suggests that . . . Phillips inspected the engine up close where he was able to reach that conclusion.
>
> As far as his [CV] is concerned, . . . Phillips does list that he was certified by the state of Michigan as a mechanic in 1981; has a BA with honors in business; fixed and sold cars while studying for the BA; is a member of numerous car organizations such as Classic Car Club of America; NADA, which the [c]ourt knows to be a pricing evaluation guide for determining prices of automobiles; a member of the Buick Club and others; started Auto Appraise, Inc., in 1991; is the sole owner

11

of Auto Appraise; has worked for Hagerty Classic Insurance. [The] [c]ourt knows Hagerty Classic Insurance to be [an] insurance company which specializes in the field of insuring antique automobiles, including muscle cars.

So it would appear that, based on his qualifications, that he has some knowledge beyond that of the average layperson in the area of auto appraisals. Testimony by an expert witness is governed by N.J.R.E. 702, which states if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

It would appear that based on the [CV] of . . . Phillips that he certainly has something to bring to the table by way of testimony. I find that his CV suggests that he is qualified to be an expert.

Now, as far as the net opinion is concerned, . . . counsel raises the issues involving . . . Phillips, that there is not a lot to suggest as to . . . whether he saw this car up close or whether he saw it through photographs, nothing was necessarily flushed out by way of discovery according to counsel for the plaintiff. However, . . . Phillips' opinion appears to be sufficiently supported with facts. He relies on the industry standard from ASE, ISO, and I-CAR in or — he was able to render an opinion accordingly. While, . . . he references those industry standards, it certainly could be brought out on cross-examination. That's what he relies on. I think the Rule is general enough that Phillips'[] appraisal . . . doesn't fall in the category of a net opinion, so I'm going to permit him to testify.

At trial, Phillips testified to his extensive experience related to classic cars. The judge qualified him as an expert in the field of classic cars, and made the following additional findings:

> [Phillips] testified that he's [been] in the business for [thirty]-plus years, a mechanic since 1981. [He] [s]tarted the business in 1989. This particular business since 1991. . . . [H]as four employees and . . . manages [three-hundred] inspectors, essentially nationwide.
>
> He's in the business of appraising vehicles. Originally, the business was for evaluation and appraisals of classic cars, mostly [one-hundred] percent of that work, but it's since gravitated towards about [fifty] to [seventy] percent of the work. He's testified that he is experienced in rebuilding motors. He has done so far too many times to count, and in fact is in process of rebuilding a motor, a 327 engine in a '66 Corvette.
>
> I find that he is qualified to testify as an expert in the field of classic cars.

Expert testimony is governed by Rule 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
>
> [N.J.R.E. 702.]

The Supreme Court has stated, an expert "must 'be suitably qualified and possessed of sufficient specialized knowledge to be able to express [an expert opinion] and to explain the basis of that opinion.'" Agha v. Feiner, 198 N.J. 50, 62 (2009) (quoting State v. Moore, 122 N.J. 420, 458-59 (1991)). The expertise of a witness may be derived strictly from his occupational experience. Correa v. Maggiore, 196 N.J. Super. 273, 282 (App. Div. 1984). The Supreme Court has also stated "an expert may be qualified by study without practice or practice without study[.]" State v. Smith, 21 N.J. 326, 334 (1956); see also Koseoglu v. Wry, 431 N.J. Super. 140, 159 (App. Div. 2013).

A net opinion is one rendered with only "an expert's bare conclusions, unsupported by factual evidence[.]" Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). "In essence, the net opinion rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion." Vitrano by Vitrano v. Schiffman, 305 N.J. Super. 572, 577 (App. Div. 1997) (quoting Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996)). The net opinion rule "frequently focuses . . . on the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom." Buckelew, 87 N.J. at 524 (citations omitted). "Where . . . an expert offers an opinion without providing specific

underlying reasons for the alleged malfunction, he ceases to assist the trier of fact and becomes nothing more tha[n] an additional juror." Vitrano, 305 N.J. Super. at 577 (alterations in original) (quoting Jimenez, 286 N.J. Super. at 540).

"An expert's conclusion 'is excluded if it is "based merely on unfounded speculation and unquantified possibilities."'" Townsend v. Pierre, 221 N.J. 36, 55 (2015) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). "A party's burden of proof on an element of a claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts [the] record." Ibid. "[E]xpert testimony must relate to generally accepted . . . standards, not merely to standards personal to the witness." Fernandez v. Baruch, 52 N.J. 127, 131 (1968) (citing Carbone v. Warburton, 11 N.J. 418, 425 (1953)). "A standard which is personal to the expert is equivalent to a net opinion." Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999) (citing Crespo v. McCartin, 244 N.J. Super. 413, 422-23 (App. Div. 1990)). "In other words, plaintiff must produce expert testimony upon which the jury could find that the consensus of the particular profession involved recognized the existence of the standard defined by the expert." Ibid. (citing Fernandez, 52 N.J. at 131).

We are unpersuaded the trial judge abused his discretion when he permitted Phillips to testify. The judge made thorough findings regarding Phillips' qualifications to render an expert opinion when he adjudicated the in limine motion, and when he qualified Phillips during the trial. The judge also addressed the basis of Phillip's report and concluded it was not a net opinion. The judge noted Phillips had extensive experience appraising damage to classic cars, rebuilding engines, and generally conducting business around classic cars. The judge found Phillips was not only qualified to render his opinion, he had provided the underlying standards to support his findings. We are satisfied the decision to admit the expert testimony was based on credible evidence in the record and should not be disturbed.

We add that it is immaterial whether the trial judge considered Phillips' opinion regarding causation because the judge's findings were not based on causation, but rather defendant's role in the concealment of the damage to the engine and tailshaft. Phillips' testimony, and the judge's findings, regarding causation are irrelevant to our consideration of whether a CFA violation could be determined based on the grounds of the concealment from the evidence presented. Similarly, Phillips' testimony regarding valuation does not render his

16

opinion concerning the concealment invalid because the judge did not rely upon Phillips' opinion of diminution in value to the vehicle to determine damages.

## B.

We next address defendant's argument the trial judge erred when he admitted color photographs of the engine block and tailshaft into evidence. During the trial, defendant objected to the color photographs plaintiff sought to enter into evidence on grounds it was only provided black and white photographs during discovery. On appeal, defendant argues Phillips had the color photographs, which he utilized to render his opinion, whereas defendant had only black and white photographs. Defendant argues the color photographs were "vital proofs that [d]efendant had not been provided until the trial" because "[t]he trial court found certain color photographs supported [p]laintiff's theory that epoxy was used on the engine[,]" specifically the photo depicting the roll of painter's tape atop the tailshaft. Defendant claims it was prejudiced because if it had the color photographs it would have retained an expert to rebut plaintiff's evidence. Defendant argues Rule 1002 required plaintiff to produce the original color photographs, and "[t]he failure to disclose the color photographs meant that [d]efendant did not truly understand the proofs that would be presented regarding the claim of consumer fraud."

17

"[I]n reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion[.]"  Estate of Hanges, 202 N.J. at 382 (quoting Hisenaj, 194 N.J. at 12).  Rule 1002 states "[t]o prove the content of a writing or photograph, the original writing or photograph is required except as otherwise provided in these rules or by statute."  N.J.R.E. 1002.  Rule 901 provides "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims."  N.J.R.E. 901. Authentication of a photograph requires testimony establishing

> (1) the photograph is an accurate reproduction of what it purports to represent; and (2) the reproduction is of the scene at the time of the incident in question, or, in the alternative, the scene has not changed between the time of the incident in question and the time of the taking of the photograph.
>
> [State v. Wilson, 135 N.J. 4, 15 (1994) (citing Garafola v. Rosecliff Realty Co., Inc., 24 N.J. Super. 28, 42 (App. Div. 1952)).]

Here, the trial judge overruled defendant's objection to the entry of the color photographs into evidence, stating:

> [W]hile [defendant] raises the issue that the photos that were provided were black and white and [it] specifically asked for color, . . . I don't see any specific objection being made to anything which is more

18

> prevalent or more highlighted as a result of it being color.
>
> I . . . understand the argument raised by [plaintiff's counsel] that they don't have a color copier . . . at his office[.] . . . But be that as it may, . . . I still don't see the prejudice to the defense by now allowing the color copies to be admitted into evidence. It would certainly be an aid to the [c]ourt. It wasn't really an objection to the contents in the photograph, other than the fact that they are color copied. So, over [defendant's] objection, . . . I'll permit it.

We agree with the judge's assessment. Defendant's only argument on the objection was not to contest the difference in the content between the color and black and white photographs, but to complain the former had not been provided during discovery. An abuse of discretion requires defendant to show a greater prejudice.

Indeed, this is because the testimony throughout the trial did not turn on whether the photographs were in color. The photographs were not offered to prove defendant had caused the damage, but rather, that an epoxy-like substance was utilized during repair of the engine, which was visible in both sets of photographs. Additionally, Phillips did not rely solely on the photographs in forming the opinions because he testified he inspected the engine in person. Moreover, the judge's findings were that the most damaging piece of evidence in the claim relating to the concealment of the damage was a photograph

19

depicting the tailshaft with a roll of painter's tape hanging on it, which was evident regardless of whether the photographs were in color. Most importantly, the color photograph of the tailshaft used at trial was not a surprise because Eugene had taken the photograph and sent it to plaintiff while the vehicle was in defendant's possession.

When the judge reviewed the color photographs at trial, he essentially performed an authentication procedure before admitting the photographs under Rule 901 as an exception to Rule 1002. For these reasons, the admission of the color photographs was not an abuse of discretion.

II.

Defendant argues the trial judge permitted Phillips testimony to exceed his report, which "created an unfair advantage where not only was the case different than defendant thought, but defendant had no opportunity to obtain a new rebuttal witness." Defendant cites to State v. Cain, 224 N.J. 410 (2016), and notes the Supreme Court applied the plain error rule to the admissibility of an expert's opinion where a party raised no objection, and the testimony went to the ultimate issue in the case. Defendant also relies upon McKenny v. Jersey City Med. Ctr., 167 N.J. 359, 371-72 (2001) for the proposition that there is an

undue prejudice when an expert is permitted to testify beyond the scope of a report. We find these arguments unpersuasive.

At the outset, we note:

> [I]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.
>
> [State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).]

"[A]ppellate courts are empowered, even in the absence of an objection, to acknowledge and address trial error if it is 'of such a nature as to have been clearly capable of producing an unjust result[.]'" Ibid. (quoting R. 1:7-5). "Further, our appellate courts retain the inherent authority to 'notice plain error not brought to the attention of the trial court[,]' provided it is 'in the interests of justice' to do so." Ibid. (alteration in original) (quoting R. 2:10-2).

In Cain, the Supreme Court reversed a trial court's decision to permit an expert to testify to a defendant's state of mind in a drug distribution case because it was unduly prejudicial. 224 N.J. at 413-14. The Court noted that permitting the expert to opine on "that ultimate issue of fact was not necessary to assist the jury." Id. at 414. The Court held

the expert's testimony—following the lengthy and intricate hypothetical question—exceeded appropriate bounds and encroached on the jury's exclusive domain as finder of fact. The hypothetical not only resembled a mid-trial summation encapsulating every minor detail of the case, but also permitted the expert to opine on the defendant's state of mind—whether he intended to distribute drugs. . . . The jurors were perfectly capable of deciding that issue on their own.

[Ibid.]

In McKenny, which was a medical malpractice action, the issue was not whether the experts' trial testimony exceeded the scope of their report. 167 N.J. at 373-75. Rather, the experts completely changed their testimony regarding the essential facts of the case, namely, dates, parties involved, and material facts relating to the plaintiff's medical malpractice claim, the night before they were scheduled to testify. Ibid.

Here, neither Cain nor McKenny are applicable. Defendant was provided Phillips' report before the trial and was on notice as to the subject matter of his testimony. As we noted, the trial judge qualified Phillips as an expert in the field of classic cars after detailing his CV and occupational experience. Phillips testified extensively at trial regarding the damage to the vehicle and the attempted repairs involving the epoxy-like substance. He also testified about the difference in value between a numbers matching car and the various other

22

forms of classic cars, including date matching and period matching cars. He also testified as to what may have caused the damage in the car. Phillips testified he reviewed photographs of the engine and tailshaft, and examined the components in person to form his opinion. Phillips' testimony was well within the purview of his expertise, and unlike McKenny, was not materially different from the content of his report.

Also, unlike Cain, the testimony here was an aid to the trial judge and did not encroach upon or confuse the fact finding process. This is demonstrated by the judge's rejection of Phillip's testimony relating to causation and damages. Therefore, notwithstanding defendant's failure to object to the expert testimony during the trial, the arguments now asserted on appeal do not demonstrate a plain error or an unjust result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0228-17T4