**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2841-21

MARCOS DE OLIVEIRA,

    Plaintiff-Appellant,

v.

AUTO SPORT OF NEWARK,
CORP., d/b/a NEWARK AUTO
SPORTS CO.,

    Defendant,

and

ANSELL HEALTHCARE
PRODUCTS, LLC, TOYOTA
MOTOR SALES, U.S.A., INC.,
and AUTOZONE AUTO PARTS,

    Defendants-Respondents.

_____

Argued September 27, 2023 – Decided February 5, 2024

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2685-19.

Paul F. O'Reilly argued the cause for appellant (Law Offices of James Vasquez, PC, attorneys; Angelo Jamie Vasquez and Paul F. O'Reilly, on the brief).

Jo E. Peifer argued the cause for respondent Toyota Motor Sales, U.S.A., Inc. (Lavin, Cedrone, Graver, Boyd & DiSipio, attorneys; Jo E. Peifer, of counsel and on the brief; Gerard Cedrone, on the brief).

PER CURIAM

In this personal injury action, plaintiff Marcos De Oliveira appeals from an April 4, 2022 Law Division order dismissing his complaint against defendant Toyota Motor Sales, U.S.A., Inc. (TMS) on summary judgment. Because there was no cognizable evidence in the record to support a reasonable inference that TMS was responsible for plaintiff's injuries, we affirm.

I.

We summarize the facts from the motion record in a light most favorable to plaintiff as the non-moving party. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The incident occurred on November 6, 2018, while plaintiff was repairing a 2004 Toyota Highlander at an autobody shop in Newark. Plaintiff was an automobile mechanic with twenty-five years' experience.

At deposition, plaintiff testified he replaced the Highlander's power steering pump, steering box, and serpentine belt while the engine was turned off.

When he was done replacing the parts, plaintiff turned on the engine and "check[ed] whether everything was okay." As he was replacing the serpentine belt guard – with the engine running – his glove was caught in the moving belt, amputating his right index finger.

Employed by defendant Auto Sport of Newark, Corp., d/b/a Newark Auto Sports Co., at the time of the incident, plaintiff was wearing latex gloves manufactured by defendant Ansell Healthcare Products, LLC, and purchased at defendant AutoZone Auto Parts. The Highlander was manufactured by TMS. Plaintiff sued all four defendants.[1]

Pertinent to this appeal, plaintiff asserted TMS breached its duty to ensure the safety of its vehicles under a negligence theory and the Highlander had a manufacturing defect under the Product Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11. During discovery, plaintiff served the report of his automotive expert, William Guentzler, Ph.D., whose doctorate degree was in industrial technology.

In his report, Guentzler explained he was hired by plaintiff to determine whether there were any design or manufacturing defects in "exemplar gloves"

---

[1] Plaintiff's claims against Auto Sport, Ansell, and AutoZone were dismissed on summary judgment on April 4, 2022. Because plaintiff does not appeal from the orders dismissing his claims against these entities, they are not parties to this appeal. We therefore confine our review to plaintiff's claims against TMS.

that would have caused plaintiff's injuries. Most of the expert's thirty-six-page report pertains to his findings and conclusions concerning the allegedly defective glove.

Conversely, the expert's findings and conclusions concerning the Highlander were brief. In section 5.0 of his report, entitled "Summary of Opinions," Guentzler stated:

> 5.7 The location of the power steering reservoir on the Toyota Highlander constitutes a design defect because it is too close to the serpentine belt and [p]ower [s]teering fluid may contact the belt, causing the risk of injury.
>
> 5.8 Designing the Toyota Highlander to utilize a [s]erpentine belt without a belt guard constitutes a design defect because of the risk of injury, such as this accident.

Guentzler's opinions concerning both design defects on the vehicle at issue are similarly stated, without elaboration, in the "Conclusions" section of the report.

Referencing photographs of an exemplar Highlander furnished by plaintiff's counsel, in paragraph 7.1 of his report, Guentzler set forth the basis of his opinion: "Photo 01 shows that the [p]ower [s]teering reservoir is only four (4) inches from the unguarded serpentine belt on the Toyota Highlander. This is extremely dangerous because to check for leaks the engine must be running which puts the technician's hands too close to be safe." In paragraph

4

7.3, Guentzler stated, without elaboration: "Research was conducted in the various [b]elt guards available for purchase in the aftermarket industry." Photographs of nine of the belts are included in the report.

There is no indication in the report, however, that Guentzler reviewed any discovery in this matter, including plaintiff's deposition testimony describing how and when he was injured. Nor does the report indicate Guentzler reviewed the Highlander's design, maintenance, or repair manuals. Although the report indicates the expert reviewed the amended complaint, that pleading does not indicate plaintiff was injured while reinstalling the serpentine belt guard with the engine running as he stated when deposed.

At the close of discovery, all defendants moved for summary judgment. Immediately following argument, the motion judge issued an oral decision, dismissing plaintiff's complaint in its entirety. Toward the end of his decision, the judge tersely addressed plaintiff's claims against TMS, finding plaintiff's expert was not qualified to render an expert opinion in this matter and his opinion was net. The judge stated:

> [Guentzler] . . . claims there[] was a design defect. But he's a chemist. He's not . . . an engineer and he's not . . . (Inaudible) basis to make the argument that in fact the . . . design was defective.

5

> There's got to be some support from some expert somewhere. Because obviously, we're talking about a . . . mechanical device that's not within the (Inaudible) of the normal average jury. You need an expert.

The judge then afforded counsel the opportunity to expound upon their arguments. TMS's counsel clarified summary judgment was appropriate "for a number of reasons," including: plaintiff failed to demonstrate "the Highlander was in the same condition as it was at the time it was distributed in 2004"; Guentzler "never looked at the actual . . . vehicle that's alleged to be defective"; Guentzler's report lacked factual support in the record; and plaintiff failed to show how he was injured by the Highlander's defect. Instead, TMS argued plaintiff's injuries stemmed from the inherent characteristics of the engine's moving parts. Acknowledging Guentzler had not inspected the vehicle at issue, plaintiff's counsel countered such failure was "not a fatal flaw" under the governing case law. In reply, TMS's attorney noted in those cases, the experts had considered photographs of the products at issue.

The judge reiterated his findings, stating Guentzler was

> a chemist obviously brought in about issues involving the glove and the fluid . . . . I think there's a failure of proof here.
>
> The . . . expert report is a net opinion as to what – how it could possibly be defective, he's not an engineer. And I don't think there's a (Inaudible) normal

A-2841-21

average juror. And therefore, the allegations with regard to [TMS], I'm gonna grant the motion for summary judgment.

Plaintiff now appeals, presenting three arguments for our consideration. Plaintiff first contends "[t]he facts permitted an inference that because of the automobile's defects," the Highlander "was not reasonably safe for its intended and foreseeable use when it left [TMS]'s control." Arguing Guentzler's opinion regarding both defects was unrefuted, plaintiff contends, "[a]t the very least, there is a genuine issue as to whether the unguarded serpentine belt and its close proximity to the power steering reservoir constituted defects." Plaintiff further claims Guentzler was well qualified and his opinion was not net.

## II.

As a preliminary matter, the motion judge's opinion falls short of the requirements set forth in Rule 1:7-4 (a). The rule requires "the court . . . find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right." See also Curtis v. Finneran, 83 N.J. 563, 570 (1980) (recognizing "the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions" as required by Rule 1:7-4).

A-2841-21

In our review of a summary judgment decision, we are required to measure the motion court's findings and conclusions "against the standards set forth in Brill." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 498 (App. Div. 2000). Those standards are well settled. Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill, 142 N.J. at 528-29; see also R. 4:46-2(c). Issues of law are subject to de novo review and the motion judge's determination of such issues is accorded no deference. Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021).

Notwithstanding our de novo standard of review, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018). We have recognized "[t]he duty to find facts and state conclusions of law is explicit in R[ule] 1:7-4, iterated in connection with motions for summary judgment in R[ule] 4:46-2,[2] and mandated where there is

---

[2] Rule 4:46-2 requires the trial court to "find the facts and state its conclusions in accordance with R[ule] 1:7-4."

an appeal by R[ule] 2:5-1(b).[3]" In re Will of Marinus, 201 N.J. Super. 329, 339 (App. Div. 1985).

Although we do not endorse the motion judge's failure to fully comply with Rule 1:7-4 in this case, his terse findings do not impede our review. We are convinced by our own independent assessment of the record summary judgment was properly entered because we agree with the motion judge – albeit for different reasons – that Guentzler's opinion was net. See Medford v. Duggan, 323 N.J. Super. 127, 138 (App. Div. 1999) (recognizing the principle that an appellate court will affirm an order or judgment if it is legally sound, even if the trial court applied poor or incorrect reasoning); see also T.B. v. Novia, 472 N.J. Super. 80, 93 (App. Div. 2022) (explaining that we may affirm summary judgment orders for reasons other than those expressed by the trial court). We conclude a remand for more explicit findings would only serve to delay the same disposition. In doing so, we note plaintiff does not seek a remand. Nor has either party requested the judge amplify his decision under Rule 2:5-1(b), or clarify the inaudible portions of his decision.

---

[3] Under Rule 2:5-1(b), the trial court may amplify its reasons within fifteen days of the appeal; the motion judge did not do so here. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 300 (App. Div. 2009).

A-2841-21

III.

A.

Well-established principles guide our review. Melding the elements of product liability under the common law, the PLA recognizes three claims: design defect, manufacturing defect, and failure to warn. N.J.S.A. 2A:58C-2; see also Roberts v. Rich Foods, Inc., 139 N.J. 365, 375 (1995); Dziewiecki v. Bakula, 361 N.J. Super. 90, 97 (App. Div. 2003).

To succeed on a product liability claim, the plaintiff must make a prima facie showing that "(1) the product design was defective; (2) the defect existed when the product was distributed by and under control of the defendant; and (3) the defect caused injury to a reasonably foreseeable user." Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982). As a "fundamental prerequisite," a plaintiff must establish causation, i.e., "the product was a proximate cause of the injury." Coffman v. Keene Corp., 133 N.J. 581, 594 (1993). The plaintiff need not prove the defect was the sole cause of the injury; the manufacturer or seller will be liable if the defect was a concurrent or substantial contributing cause. Perez v. Wyeth Labs, Inc., 161 N.J. 1, 26-27 (1999).

A plaintiff's burden can be met by: (1) direct evidence, (2) circumstantial evidence that justifies such an inference, or (3) negating all other possible

reasons for the occurrence to make it reasonable to assume that the defect existed prior to the sale.  See Scanlon v. Gen. Motors Corp., 65 N.J. 582, 591-92 (1974) (quoting Jakubowski v. Minnesota Min. & Mfg., 42 N.J. 177, 183-84 (1964)). To circumstantially establish a manufacturing defect, the plaintiff must establish the incident:  (1) "ordinarily occurs as a result of a product defect" and (2) "was not solely the result of causes other than the product defect existing at the time" the product left the manufacturer's control.  Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 104 (1999) (quoting Restatement (Third) of Torts § 3 (Am. L. Inst. 1997)).  However, "[a]n inference of defectiveness may not be drawn from the mere fact that someone was injured."  Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 49 (1996).  "Liability should be imposed only when the manufacturer is responsible for the defective condition."  Ibid.

Although plaintiff generally asserted failure to warn and manufacturing defects in his amended complaint, those claims were abandoned during discovery.  Indeed, Guentzler's report is devoid of any conclusions supporting a manufacturing defect or failure to warn allegation.  Accordingly, we limit our review to plaintiff's claim of design defect.

To prove a design defect under the PLA, a plaintiff must establish the product was "designed in a defective manner."  N.J.S.A. 2A:58C-2(c).  Further,

11

a plaintiff must demonstrate that the product "was not reasonably fit, suitable or safe for its intended purpose." Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990) (quoting N.J.S.A. 2A:58C-2). Accordingly, "[a] plaintiff must prove either that the product's risk[] outweigh[s] its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." Lewis v. Am. Cyanamid Co., 155 N.J. 544, 570 (1998). Plaintiffs must also prove that the defect was in existence while the product was in the control of the manufacturer. Scanlon, 65 N.J. at 591.

"To prove the existence of a defect, a plaintiff may rely on the testimony of an expert who has examined the product or offers an opinion on the product's design." Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J. Super. 320, 331 (App. Div. 2004); see also Myrlak, 157 N.J. at 97. "Where the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony." Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 341 (App. Div. 2000). Expert testimony is necessary to assist the fact finder in understanding "the mechanical intricacies of the instrumentality" and in excluding other possible causes of the accident. Jimenez v. GNOC Corp., 286 N.J. Super. 533, 546 (App. Div. 1996).

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). Similarly, "the qualifications of experts are left to the discretion of the trial court, and its decision is conclusive unless clearly shown to be erroneous." State v. Perez, 218 N.J. Super. 478, 483 (App. Div. 1987). "The requirements for expert qualifications are in the disjunctive" and "can be based on either knowledge, training or experience." Bellardini v. Krikorian, 222 N.J. Super. 457, 463 (App. Div. 1988); see also N.J.R.E. 702 (establishing when expert testimony is permissible and requiring the expert be qualified in his or her respective field).

The net opinion rule is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend, 221 N.J. at 53-54 (alterations in original) (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)); see also Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) (holding "a trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified"). Pursuant to the net opinion rule, therefore, experts must "be able to identify the factual bases for their conclusions, explain their

methodology, and demonstrate that both the factual bases and the methodology are reliable." Townsend, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Stated another way, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). Our courts have recognized a wide array of sources that may satisfy this requirement, including the witness's own extensive education, training and experience, see, e.g., State v. Townsend, 186 N.J. 473, 495 (2006); Scully v. Fitzgerald, 179 N.J. 114, 129 (2004); other scholarly studies within the field, see, e.g., Hisenaj v. Kuehner, 194 N.J. 6, 24 (2008); "handbooks, manuals, treatises, articles or trade publications" within a particular industry, Pomerantz Paper Corp., 207 N.J. at 374; criteria found in government or private standard-setting organizations, see, e.g., Grzanka v. Pfeifer, 301 N.J. Super. 563, 582 (App. Div. 1997); and trade-specific customs, see, e.g., Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 413 (2014).

Thus, "[t]he net opinion rule is succinctly defined as 'a prohibition against speculative testimony.'" Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka, 301 N.J. Super. at 580). This results because a

14

speculating expert "ceases to be an aid to the trier of fact and becomes nothing more than an additional juror," Jimenez, 286 N.J. Super. at 540, affording no benefit to the fact finder, see N.J.R.E. 702.

B.

With these principles in view, we turn to plaintiff's overlapping arguments. Initially, we part company with the motion judge's finding that Guentzler was not qualified to render expert opinion in this matter. The judge erroneously concluded plaintiff's expert was a chemist even though Guentzler's resume makes no mention of chemistry and clearly reflects his expertise in industrial technology. For example, Guentzler's formal education included advanced degrees in industrial technology; his licensure and certifications were attained in driver and traffic safety education; and he was experienced as an instructor in industrial technology and related disciplines. Based on Guentzler's training and experience, we are satisfied he was qualified to render expert opinion in this matter. See Bellardini, 222 N.J. Super. at 463.

We next consider whether Guentzler's report cleared the net opinion hurdle. Guentzler offered two theories of defective design: (1) the power steering fluid reservoir was located "too close to the serpentine belt and [p]ower

[s]teering fluid may contact the belt, causing the risk of injury"; and (2) the Highlander's design without a belt guard "constitute[d] a design defect."

Addressing his first opinion, Guentzler failed to explain the methodology supporting his opinion, see Townsend, 221 N.J. at 55, or propose how the engine could have been designed to eliminate the risk of injury, see Lewis, 155 N.J. at 569. Nor did Guentzler identify any relevant scholarly or trade publications supporting an alternate design. See Pomerantz, 207 N.J. at 374. Contrary to plaintiff's suggestion, the Occupational Safety and Health Administration's (OSHA) Rotating Access Guidelines, which warn of bodily injury when machinery is characterized by "rotating . . . or accessible moving parts," do not support Guentzler's theory of liability against TMS. These OSHA guidelines "require[] employers to train employees in safe machine operation." They are not directed at manufacturers.

Guentzler's second theory of design defect is equally unsupported. Guentzler's report indicates he only examined photographs of an exemplar Highlander. There is no competent evidence in the record that the 2004 Highlander at issue was sold without a belt guard, that an aftermarket guard had been installed on the vehicle, or that it had not been altered after it was originally sold by TMS. Guentzler did not cite the Highlander's design, maintenance, or

16

repair manuals. Crucially, Guentzler's opinion ignored plaintiff's testimony that the incident occurred when he was replacing the serpentine belt guard while the engine was running. There is no evidence in the record that plaintiff was injured because the Highlander was designed without a belt guard. Because Guentzler's opinion "lack[ed] an appropriate factual foundation," it constituted a net opinion. See Pomerantz, 207 N.J. at 373.

An automobile engine is a complex system, consisting of intricate moving and interworking components in a relatively confined space. Accordingly, expert testimony was required to prove plaintiff's design defect claim. See Rocco, 330 N.J. Super. at 341; Jimenez, 286 N.J. Super. at 546. Because Guentzler's opinion was net, lacking sufficient information to support a design defect claim, we conclude plaintiff's complaint against TMS was properly dismissed on summary judgment.

Finally, we have considered plaintiff's circumstantial evidence argument and conclude it lacks sufficient merit to warrant discussion in our written opinion, R. 2:11-3(e)(1)(E), beyond the brief comments that follow.

The incident in the present matter does not satisfy the rule set forth in Myrlak, 157 N.J. Super. at 104, because it is not "of a kind that ordinarily occurs as a result of a product defect" and was not "solely the result of causes other

17

than product defect existing at the time of sale or distribution." When deposed, plaintiff admitted the incident occurred while he was replacing the belt guard with the engine running.

Moreover, moving parts are inherent characteristics of an automobile engine. Under the PLA, a manufacturer or seller is relieved of liability "for harm allegedly caused by a product that was designed in a defective manner" if:

> The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended . . . .
>
> [N.J.S.A. 2A:58C-3(a)(2).]

Based on our review of the evidence in the record, we conclude plaintiff has not demonstrated any defect in the Highlander's engine or its components that caused his injury. We therefore discern no sound reason to vacate the order dismissing his complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2841-21